46775. GUIMOND v. THE STATE.
46853. LAWS v. THE STATE.
(386 SE2d 158)

BELL, Justice.

James Allen Guimond and Danny Wayne Laws were jointly tried for and convicted of the malice murder of John Sumlar. Guimond was also convicted of burglary and theft by taking, and Laws was further convicted of burglary, the possession of a firearm during the commission of a crime, and theft by taking. Guimond and Laws were each sentenced to life imprisonment for murder and to various periods of years in prison for their other convictions. They now appeal.[1] They both contend that the trial court erred in ruling that statements they made to police were admissible, and that the trial court erred in denying their motions to sever. Laws has an additional enumeration, in which he argues that the trial court erred in introducing evidence of a similar crime that he allegedly committed. We affirm.

The evidence would have authorized a rational trier of fact to find that about a week before Sumlar's killing, Guimond, Laws, and Charles Jenkins formulated a plan to burglarize Sumlar's home. The three men made the plan because they knew that Sumlar was involved with gambling activities and kept large amounts of cash and jewelry on himself, in his car, and at home.

Guimond, Laws, and Jenkins, who are from the Atlanta area, first

---

[1] Sumlar was killed on July 13, 1985. Guimond and Laws were indicted June 5, 1987. Following a jury trial, they were found guilty and sentenced on December 2, 1988. Laws filed a motion for new trial on December 13, 1988. Guimond filed a motion for new trial on December 20, 1988. The court reporter completed certifying the transcript on January 12, 1989. The trial court denied both motions for new trial on February 21, 1989. Guimond filed his notice of appeal on March 6, 1989, and Laws filed his on March 14, 1989. Guimond's appeal was docketed in this court on March 14, 1989, and Laws' appeal was docketed here on March 30. On May 12, 1989, Guimond and Laws submitted their appeals for decision on briefs.

went to Rome, Georgia, where Sumlar lived, a few days before the killing to find out exactly where Sumlar lived and worked, so as to finalize their plans for the burglary. To carry out their plan, they went to Sumlar's house on July 13, 1985. Guimond served as the driver and lookout, while Laws and Jenkins entered the home. As they began to search the residence, Guimond, who was parked near the house, radioed them that an automobile was arriving there. Sumlar, who was driving the car, got out and entered his house. Sumlar was then shot. His feet were tied together, and his pockets were searched. Laws and Jenkins then went outside and left the scene in the car driven by Guimond. Laws and Jenkins had obtained money and jewelry from Sumlar's home, and the three men shared the proceeds from their endeavor. A neighbor who heard the gunshots notified the police, who found Sumlar's body in his bedroom. Sumlar died from a gunshot wound to the chest.

Jenkins, who pled guilty to felony murder and received a life sentence, testified against Laws and Guimond. He testified that, when he discussed the burglary of Sumlar's home with Guimond, he mentioned that they could just burglarize the house, or could burglarize the house and also wait for Sumlar to come home so they could rob him. According to Jenkins, Guimond said, "[h]e was in for it either way, whatever happened." Jenkins added that although the three men did not plan to kill Sumlar, he and Laws each entered Sumlar's house with a weapon. Moreover, he testified that when Sumlar came into the house, it looked like Sumlar had a pistol in one hand. He added that Sumlar first went to the bedroom where Laws was, and that a series of gunshots occurred. Jenkins said he then ran to the bedroom, where he found Sumlar slumped on the floor. Jenkins testified that one of Sumlar's hands held a gun that was enclosed in a sock. Jenkins said he took the gun from Sumlar and kept it.

Guimond and Laws made statements to the police that were admitted into evidence at trial. Guimond denied that he participated in the plan to rob Sumlar or burglarize his house. He said that Jenkins just told him they were going to Rome to collect a debt. He said that when they got to Rome, he saw that Jenkins and Laws had guns. Jenkins told Guimond that he had better do as he was told, because Jenkins knew where Guimond's daughter lived. Guimond added that he participated in events that night solely because of the threats against his daughter. Guimond did not relate any knowledge about what happened inside the house.

In his statement Laws acknowledged the plan to burglarize Sumlar's residence, and said that he, Jenkins, and Guimond made one visit to Rome before the night of the killing to find out where Sumlar lived. Laws added that no one discussed hurting Sumlar. Laws stated that he did not have a weapon when he and Jenkins en-

tered Sumlar's residence, but that Jenkins had three weapons in a bag he was carrying. According to Laws, Jenkins was the person who shot Sumlar in his bedroom.

1. Having examined the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient for a rational trier of fact to have found Guimond and Laws guilty beyond a reasonable doubt of the crimes for which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Guimond and Laws both contend that the trial court erred in admitting their custodial statements. We find no error. Guimond alleges that his custodial statement was admitted into evidence in violation of *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), in that, he contends, the police interrogated him after he had invoked his right to counsel. We find no error. Following a lengthy *Jackson-Denno* hearing, the trial court concluded that Guimond in fact initiated the conversation with police after invoking his right to counsel. The court further found that, once Guimond indicated his desire to make a statement, he was read his *Miranda* rights, and made a knowing and intelligent waiver thereof. The court concluded that no violation of *Edwards* had occurred. Having reviewed the evidence presented, we cannot conclude the trial court's findings are clearly erroneous. See *Henson v. State*, 258 Ga. 600, 601 (1) (372 SE2d 806) (1988). We therefore conclude the trial court did not err in admitting the statement.

Laws contends that his statement was inadmissible because, he says, the police officers interrogating him told him that if he made a statement he would receive a probationary sentence. See OCGA § 24-3-50. The trial court, after hearing evidence from two police officers and the district attorney (who also spoke with Laws before he gave his statement), found that no promise of probation was made to Laws before he gave his statement. After reviewing the record, we cannot conclude that the trial court's finding is clearly erroneous, *Henson*, supra, 258 Ga. at 601, and we therefore conclude the trial court did not err in admitting Laws' statement.

3. Guimond and Laws also both contend that the trial court erred in denying their motions to sever their trials. We find no error.

The question of severance of the trial of defendants for a capital felony where the death penalty has been waived is within the discretion of the trial court. OCGA § 17-8-4. Factors which should be considered in exercising that discretion are (1) whether the number of defendants will create confusion; (2) whether there is danger that evidence against one defendant will be considered against another by the jury despite instructions from the court; (3) whether the defenses of

one defendant are antagonistic to defenses of another. *Jones v. State*, 243 Ga. 584 (255 SE2d 702) (1979); *Cain v. State*, 235 Ga. 128 (218 SE2d 856) (1975).

It is incumbent upon the defendant seeking severance to show that he will be prejudiced by a joint trial. It is not enough to claim that he has a better chance of acquittal in a separate trial. Rather, the burden is on defendant to show clear prejudice and in the absence of this showing the trial court's denial of the motion to sever will not be disturbed. *Mulkey v. State*, 250 Ga. 444 (298 SE2d 487) (1983); *Murphy v. State*, 246 Ga. 626 (273 SE2d 2) (1980). [*Satterfield v. State*, 256 Ga. 593, 596 (3) (351 SE2d 625) (1987).]

Laws asserts that the admission of Guimond's statement at their joint trials violated *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), and warranted a severance of his trial. Pretermitting the question whether a *Bruton* violation occurred, we conclude that the admission of Guimond's statement, even if error, was harmless. *Short v. State*, 256 Ga. 165, 168 (5) (345 SE2d 340) (1986); *Short v. State*, 256 Ga. 172, 172-173 (3) (345 SE2d 344) (1986). Guimond's statement implicated Laws in the plan to rob Sumlar's house and placed him at the house at the time of the murder. Guimond's statement did not contain any information concerning whether Laws or Jenkins shot Sumlar. Because evidence other than Guimond's statement[2] overwhelmingly implicated Laws in the planning of the robbery and placed him inside Sumlar's house at the time of the shooting, we conclude that any *Bruton* error in admitting Guimond's statement was harmless, and therefore renders harmless any error in failing to grant Laws' motion to sever. See *Short*, supra, 256 Ga. at 168; *Short*, supra, 256 Ga. at 172-173.

Moreover, regarding the other assertions by Guimond and Laws concerning why their motions to sever should have been granted, we conclude that they failed to make the showing of clear prejudice that is necessary to warrant a severance. *Satterfield v. State*, supra, 256 Ga. at 595-597 (3); *Ellis v. State*, 256 Ga. 751, 755 (3) (353 SE2d 19) (1987).

4. In a separate enumeration of error, Laws contends that the trial court erred in admitting similar-crimes evidence against him. Applying the appropriate guidelines, see, e.g., *Mincey v. State*, 257 Ga. 500, 505 (7) (360 SE2d 578) (1987), we find that the trial court properly admitted the evidence in question.

*Judgment affirmed in Case Nos. 46775 and 46853. All the Jus-*

---

[2] Such evidence includes Jenkins' testimony and Laws' statement.

*tices concur.*

DECIDED DECEMBER 5, 1989 —
RECONSIDERATION DENIED DECEMBER 20, 1989.

*Jones, Morgan & Byington, W. D. Payne, William W. Byington, Jr.,* for appellant (case no. 46775).

*John E. Sawhill III, William F. Sparks,* for appellant (case no. 46853).

*Stephen F. Lanier, District Attorney, C. Stephen Cox, Assistant District Attorney, Michael J. Bowers, Attorney General, Leonora Grant,* for appellee.