## A99A2464. BOOKER v. THE STATE.
### (528 SE2d 849)

PHIPPS, Judge.

Following the denial of his motion for new trial, Quenton Booker appeals his convictions of burglarizing the residence of Keshia Rodgers and Stacy Styles, committing an aggravated assault upon Styles, committing an armed robbery and aggravated assault upon Ray Collier, and possessing a firearm during the commission of a felony. Ricky McCoy, one of Booker's accomplices in the crimes, appeared as a key prosecution witness but disavowed his pretrial statements implicating Booker. Then, in an effort to convince the jury to believe those pretrial statements, the prosecution was allowed to establish the accuracy of information McCoy provided to authorities concerning crimes in which Booker had not participated. We find prejudicial error in the admission of this evidence and reverse.

Because we find no merit in Booker's challenges to the sufficiency of the evidence to support his convictions, the case may be retried.

Viewed in the light most favorable to the verdict, the evidence showed the following. Ray Collier is a Miami drug dealer who visited Atlanta with his cousin Samuel Collier in December 1994 and sold cocaine to Booker. On the evening of December 15, either Collier or his cousin was involved in some sort of altercation with Booker. Afterward, the Collier cousins went to an apartment where Rodgers and Styles lived. In short order, Booker, McCoy, and Felipe Wyatt appeared at the apartment and began banging on the door. McCoy testified that his intent was to extract revenge for the incident with Booker or take drugs and money thought to be in Collier's possession or both.

When no one opened the door, Wyatt kicked it down. As McCoy proceeded to the rear of the apartment, Booker became involved in a physical struggle with Samuel Collier in the kitchen. In the course of the struggle, Collier fell down the stairway leading to the apartment and decamped to a nearby hotel where he called the police. In the meantime, McCoy found Styles hidden in her bedroom closet, prodded her in the stomach with a gun, and asked where "it" was. Ray Collier attempted to escape from another bedroom by jumping from a third-floor apartment window onto a concrete walkway, thereby breaking his ankle. Thus immobilized, he was overtaken by McCoy and Wyatt. They inquired as to the location of drugs or money, and he responded that there was a sum of cash upstairs in his boot. Booker went upstairs and retrieved approximately $300 from the boot. After Booker came downstairs, Ray Collier was shot twice while lying on the ground. Booker, McCoy, and Wyatt then fled the scene, after which Booker and Wyatt split the money.

After the crimes in this case were committed, McCoy was arrested on charges arising from a triple execution-style homicide at a McFrugal rental office on January 6, 1995. He informed police and prosecutors of the identity of the perpetrators of the crimes in this case, the McFrugal murders, and two other homicides. Specifically, McCoy gave statements showing that on December 14, he, Wyatt, and Ralph Henderson were involved in the murder of drug dealer Donald Blair. McCoy also stated that on December 15, he, Booker, and Wyatt perpetrated the crimes involving the Collier cousins, and that Alvin Smith and two others accompanied the three perpetrators to the crime scene in a getaway van. In addition, McCoy informed the authorities of his, Wyatt's, and Smith's involvement in the December 30 murder of Donny Holland, another drug dealer. And McCoy related his, Wyatt's, and Smith's involvement in the January 6 McFrugal murders.

At trial, McCoy appeared as a State's witness. Although he

acknowledged his and Wyatt's participation in the December 15 offenses involving Collier, he testified that Booker did not participate. When asked whether his trial testimony was different from his pretrial statements, McCoy variously asserted that he was coerced into making the statements, that he had been lying, that he was promised things that had not materialized, and that he did not make the statements. Over defense objection, the prosecution was then allowed to question McCoy concerning pretrial statements made by him regarding the crimes in this case as well as the other homicides and to show that the information McCoy provided had led to the entry of guilty pleas by all identified culprits except Booker. The prosecution also elicited testimony from McCoy showing his disgruntlement because he had not received a promised prison transfer.

In closing argument, the prosecutor made extensive comments on the numerous crimes in which Booker was not involved, about which McCoy had provided evidence, including the several murders, and asked the jury to "do something about the crime problem" in the county.

1. In an array of assertions, Booker challenges the sufficiency of the evidence to support his convictions.

(a) Booker argues that there is insufficient evidence of armed robbery because the indictment alleged taking money *and* cocaine from Collier, but he asserts no cocaine was taken, and money was not taken from Collier's "person" or "immediate presence" as required by OCGA § 16-8-41 (a).

There is no merit in these arguments. An over-inclusive list of items alleged to have been taken in an indictment for armed robbery is not fatal to the validity of the conviction.[1] The evidence authorized the jury to find that the money found in Ray Collier's personal possessions in the apartment from which he had leaped was within his "immediate presence" within the meaning of OCGA § 16-8-41 (a).[2]

(b) Booker claims that his burglary conviction cannot stand because of an absence of evidence to support the charge that he entered Rodgers and Styles's apartment with the intent to commit theft. Booker's conduct in splitting the money with Wyatt after commission of the crimes authorized the jury to find that Booker possessed the requisite intent.[3]

(c) Booker argues that the evidence showed that only McCoy committed the aggravated assault upon Styles. The evidence authorized the jury to find Booker guilty of this crime on the ground that

---

[1] *Denson v. State*, 212 Ga. App. 883, 884 (2) (443 SE2d 300) (1994).

[2] See *Welch v. State*, 235 Ga. 243, 245 (1) (219 SE2d 151) (1975), and cits.

[3] See generally *Simpson v. State*, 265 Ga. 665 (461 SE2d 210) (1995).

the act was done by Booker's co-conspirator in pursuance of the conspiracy.[4]

(d) Booker challenges the sufficiency of the evidence to support his conviction of aggravated assault upon Collier because of a conflict in the evidence as to whether the shooting was done by him or by McCoy and Wyatt. This conflict was for the jury to resolve. Moreover, even if McCoy and Wyatt did the shooting, Booker would be chargeable with the commission of this assault under a conspiracy theory.

(e) Booker challenges the sufficiency of the evidence to support all convictions on the ground that there was inadequate corroboration of accomplice McCoy's testimony.

Actually, McCoy implicated Booker in the crimes through prior inconsistent statements admissible as substantive evidence[5] rather than in his trial testimony. In any event, testimony given by Rodgers, Styles, and Samuel Collier adequately corroborated Booker's participation in the crimes (as well as his possession of a weapon).[6]

2. Booker contends that the court erred in allowing the State to elicit testimony about pretrial statements given by McCoy concerning the five homicides in which McCoy and persons other than Booker were involved. The complained-of testimony was given by Douglas, the investigating detective in both this case and the McFrugal murders; Geary, one of the attorneys who prosecuted the McFrugal case; and McCoy. Booker also complains of the prosecuting attorney's references to these other crimes in closing argument.

The trial court overruled Booker's objections to the admission of the evidence, based on the prosecutor's argument that he was seeking to impeach McCoy's exculpation of Booker at trial by showing the truthfulness of his inculpation of all other criminal perpetrators prior to trial. The purported impeachment of the witness in this manner amounted to an improper attempt to bolster his credibility by showing his veracity in matters irrelevant to the issues being tried in this case.[7] These matters involved independent offenses, consisting of five homicides, which do not satisfy the requirements for admissibility at Booker's trial.[8] And evidence of these crimes harmed Booker by showing his association with individuals who had committed infamous crimes. The court thus committed prejudicial error by admit-

---

[4] See *Short v. State*, 234 Ga. App. 633, 634-635 (1) (a) (507 SE2d 514) (1998).

[5] *Knight v. State*, 266 Ga. 47, 48 (2) (464 SE2d 201) (1995).

[6] See generally *Givens v. State*, 227 Ga. App. 861, 862 (490 SE2d 530) (1997).

[7] McCoy was, however, subject to impeachment through the State's showing his prior inconsistent statements concerning Booker's involvement in the crimes in this case, as well as the fact that McCoy was motivated to recant these statements because he had not received a prison transfer.

[8] See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991); *Stephens v. State*, 261 Ga. 467, 468-469 (6) (405 SE2d 483) (1991).

ting this evidence. It follows that the prosecutor's closing argument was improper.

3. Also improper was the prosecutor's reference in closing argument to murder cases he had successfully prosecuted without testimony, obviously, from the victims. These comments were made in response to defense arguments concerning the fact that the victim Collier did not testify. Although the prosecutor certainly could have argued that the law imposes no requirement that the victim testify and given murder cases as an example, his reference to other cases in which he was involved amounted to an improper comment on facts not in evidence. "[T]he law forbids . . . the introduction into a case, by way of argument, of facts not in the record and calculated to prejudice the accused."[9]

4. In other assertions, we find no merit.

(a) The court's jury instruction on the corroboration requirement for accomplice testimony contained no expression of opinion whether the evidence showed that McCoy and Booker were accomplices.[10] The court did not err in giving this jury charge as there was evidence so showing.

(b) The court committed no error in allowing certain police officers to testify that while Collier was lying on the ground at the crime scene, he explained what had happened and said that Booker had shot him. The court's determination that this testimony was admissible under the res gestae exception to the hearsay rule was not clearly erroneous.[11]

(c) The court did not err in overruling Booker's hearsay objections to testimony from Douglas and Geary showing McCoy's prior inconsistent statements concerning Booker's participation in the crimes in this case. "The prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence . . . and is not subject to a hearsay objection."[12] The State substantially complied with the requirement that it give McCoy an opportunity to explain or deny the statements.[13] The State never sought to admit any taped or written statement in evidence.[14]

(d) Because the trial court read the indictment verbatim to the

---

[9] (Citations and punctuation omitted.) *Simmons v. State*, 174 Ga. App. 171, 177 (12) (329 SE2d 312) (1985).

[10] See generally *Ladson v. State*, 248 Ga. 470, 477 (11) (285 SE2d 508) (1981); *Sims v. State*, 266 Ga. 417, 418 (2) (467 SE2d 574) (1996).

[11] See *McKinney v. State*, 218 Ga. App. 633, 634 (1) (463 SE2d 136) (1995); see generally *Andrews v. State*, 249 Ga. 223 (290 SE2d 71) (1982).

[12] (Citations omitted.) *Knight v. State*, supra.

[13] Compare *Horne v. State*, 204 Ga. App. 81 (1) (418 SE2d 441) (1992).

[14] Compare *Dickey v. State*, 240 Ga. 634, 639 (3) (242 SE2d 55) (1978).

jurors *and* instructed them that the State was required to prove every material allegation of the indictment beyond a reasonable doubt, the court's recitation of inapplicable parts of the statutes proscribing possession of a firearm during the commission of a crime and aggravated assault did not create a reasonable probability that Booker was convicted of these crimes in a manner other than that alleged in the indictment.[15]

(e) Remaining issues involve matters that either were not preserved by proper objection or are unlikely to recur on retrial.

*Judgment reversed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED JANUARY 26, 2000.

*Monique D. Moyse*, for appellant.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.

---

[15] See *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999), citing *Martin v. State*, 268 Ga. 682, 685-686 (8) (492 SE2d 225) (1997).