## A01A1265. HENDERSON v. THE STATE.
### (556 SE2d 204)

SMITH, Presiding Judge.

Daphne Lynne Henderson was convicted by a jury of one count of obstruction of an officer and one count of aggravated battery on a peace officer. Her motion for new trial as amended was denied, and she appeals. Although we agree with Henderson that the trial court should have merged the two convictions for sentencing purposes, we find no basis for a new trial. We therefore affirm the trial court's denial of Henderson's motion for new trial but vacate and remand for resentencing.

The facts are essentially undisputed. Officer Marty Perkins and three other officers responded to a call at an apartment complex. They arrived at the scene to find Henderson rolling and writhing on the front porch of her apartment, covering her face, and screaming, "Get it off of me," although nothing appeared to be on Henderson. Two of the officers moved Henderson from the porch to the ground to protect her from injury. After a short time, Henderson began to calm down and talk with one of the other officers. Perkins testified that Henderson "seemed to really calm down and respond to" the officer. She was "chatting directly with him." Among other things, the officer asked Henderson if she had smoked anything. She responded that she had smoked crack. But following this brief conversation, Hender-

---

[6] *Simpson v. State*, 214 Ga. App. 587, 588 (2) (448 SE2d 370) (1994).

son's daughter came outside the apartment, and she was "crying and yelling" and asking her mother to get up. Perkins told the daughter that Henderson needed to lie down so she would not hurt herself, but "[a]t that point, Miss Henderson fired right back up again and began being hysterical again herself with the screaming and the yelling and the rolling around."

Henderson stood up and was stumbling around, and as Perkins and another officer attempted to restrain her and lay her on the ground, Henderson pulled Perkins's arm toward her and bit it, latching on so hard that another officer was required to pry Henderson away from Perkins. Perkins testified she had permanent nerve and muscle damage to her arm. She showed the jury her scar and pointed out a "divot" in her arm. She stated that she had a four-inch-square area on her arm where the nerves were completely severed and where she had no feeling or sensation.

Henderson acknowledged that before the incident, she smoked a piece of crack cocaine provided by an acquaintance. A short time later, "[e]verything went dark." She could not see or catch her breath, and she asked someone to open the door so that she could go outside and get some air, because she thought she was going to die. She testified that before everything became dark, she felt as if something like an animal was causing her pain, "trying to tear my face off." Henderson stated that she could feel someone moving her off the porch and onto the grass, but she did not "know what it was that was doing this to me." She remembered nothing else that happened from that time until she woke up in the emergency room.

1. Henderson makes several related arguments concerning two aspects of the trial court's charge. First, she contends that the court's instructions erroneously allowed the jury to convict her in a manner not set forth in the indictment. Second, she argues that although the indictment charged her with maliciously causing bodily harm to Officer Perkins, the court did not define the term "malicious."

We first note that Henderson failed to object to the charge on these grounds[1] and failed to reserve exceptions to the entirety of the charge, even when asked by the trial court if she had any exceptions to the charge. Henderson's complaints concerning the charge therefore have not been preserved for appellate review. *Pruitt v. State*, 258 Ga. 583, 590 (14) (373 SE2d 192) (1988). Henderson argues, however, that these contentions are reviewable under a "plain error" analysis, a doctrine that permits appellate review of unexcepted-to errors "if the errors are obvious, or if they otherwise seriously affect the fair-

---

[1] Henderson objected to the charge with respect to two minor, unrelated slips of the tongue made by the trial court, one of which the court corrected by recharging the jury.

ness, integrity or public reputation of judicial proceedings." (Citations and punctuation omitted.) *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482) (1986).[2] Alternatively, she argues that trial counsel's failure to preserve the issues for appellate review constituted ineffective assistance of counsel. For the reasons that follow, we find no reversible error with respect to the court's charge to the jury under either theory.

(a) We first address Henderson's argument that the trial court's instructions impermissibly allowed the jury to convict her of aggravated battery in a manner not set forth in the indictment. We do not agree with Henderson that obvious error occurred warranting reversal under the "plain error rule." A jury instruction defining a crime as an act that can be committed in a manner other than the manner alleged in the indictment violates a defendant's due process when "there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment." (Citation omitted.) *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999). The indictment here charged Henderson with committing aggravated battery by one method: maliciously causing bodily harm to Perkins, knowing that Perkins was a peace officer engaged in the performance of her official duties, by rendering a member of her body useless, her arm.

Henderson also correctly argues that the trial court generally defined the crime of aggravated battery as occurring when one maliciously caused bodily harm by three methods: by depriving a person of a member of his or her body; by rendering a member of the person's body useless; or by seriously disfiguring the person's body or a member of his or her body. A similar instruction was repeated when the trial court recharged the jury on all instructions, at the jury's request, the next day. Some evidence was presented of disfigurement; Perkins showed the jury her scar; and the prosecutor argued that Perkins was disfigured.

But despite this evidence and argument, we cannot agree with Henderson that reversal is required. With respect to the entire charge, Henderson takes this portion of the instruction out of context. Although the trial court initially defined aggravated battery as a crime capable of being committed in three ways, the court then read the portion of the indictment charging Henderson with aggravated battery, which specifically charged her with committing the

---

[2] Although the Supreme Court of Georgia has adopted a rule limiting the application of this doctrine to capital cases and cases in which the trial court violates OCGA § 17-8-57 by expressing an opinion concerning the guilt of the accused, it does not appear that this court has so limited the rule. See *Paul v. State*, 272 Ga. 845, 848-849 (3) (537 SE2d 58) (2000).

crime by rendering a member of Perkins's body useless, and the court stated that if the jury found Henderson caused bodily harm to a peace officer by maliciously rendering a part of her body useless, it would be authorized to find Henderson guilty. The trial court then instructed the jury concerning preparation of the verdict, stating that the jury would indicate that it found Henderson "guilty of aggravated battery in causing bodily harm *as alleged in the indictment.*" (Emphasis supplied.)

During its recharge the next day, the trial court similarly instructed the jury on how to prepare its verdict forms. These instructions clearly informed the jury that only a finding of aggravated battery by rendering a part of another's body useless was available for its consideration. See *Riley v. State*, 242 Ga. App. 720, 722 (1) (531 SE2d 138) (2000). In addition, after reading the indictment verbatim, the trial court instructed the jury on the burden of proof, particularly reciting that the State had the burden to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt. These instructions adequately informed the jury that the State was required to prove that Henderson committed the crime as alleged in the indictment. See *Booker v. State,* 242 Ga. App. 80, 85 (4) (d) (528 SE2d 849) (2000); *Salahuddin v. State*, 241 Ga. App. 168, 170 (1) (525 SE2d 422) (1999). We consequently cannot conclude that the jury convicted Henderson of commission of a crime in a manner other than that alleged in the indictment. It follows that the charge as given did not constitute plain error.[3]

(b) We next address Henderson's arguments that trial counsel's failure to object to the charge as given, to object to the State's arguments concerning Perkins's disfigurement, and to reserve exceptions for appeal constituted ineffective assistance of counsel. To prevail on an ineffectiveness claim, an appellant must show both that trial counsel's performance was deficient and that, but for this deficiency, a substantial likelihood exists that the outcome of the trial would have been different. *Head v. Carr*, 273 Ga. 613, 616 (4) (544 SE2d 409) (2001). Despite the prosecutor's arguments concerning Perkins's disfigurement, the trial court's charge, when read as a whole, informed the jury that it must consider only whether Henderson committed aggravated battery as alleged in the indictment. Under these circumstances, we cannot conclude that reversal is required on ineffectiveness grounds.

---

[3] Although the jury requested that the trial court repeat its instructions, this was not necessarily an indication that the jury was confused concerning the language of the indictment. The jury requested that *all* of the instructions be repeated. We cannot deduce from this that the jury was confused about one particular portion of the charge.

2. Henderson argues that the trial court improperly instructed the jury concerning her intent to commit the crime of aggravated battery.

(a) The court's instruction on aggravated battery stated in relevant part that a person commits this crime when he or she "maliciously causes bodily harm." Chiefly relying on *Wade v. State*, 258 Ga. 324 (368 SE2d 482) (1988), Henderson argues that the trial court erred in failing to define the term "maliciously." In *Wade*, the trial court instructed the jury that aggravated battery is committed when the defendant commits the injuries " 'maliciously, that is to say, with intent.' " Id. at 330 (11) (d). The Supreme Court held this instruction to be erroneous, stating that "[a] person acts 'maliciously' when he acts intentionally *and* without justification or serious provocation. [Cits.]" (Emphasis in original.) Id. The court's charge, "by its incompleteness, removed from the prosecution the burden of proving every element of the crime of aggravated battery beyond a reasonable doubt." (Citation and punctuation omitted.) Id. at 331 (11) (d).

But the trial court here did not incorrectly define the term. Rather, the court charged almost verbatim the language of OCGA § 16-5-24 (c), stating in part that "[A] person commits the offense of aggravated battery of a law enforcement officer when he or she maliciously causes bodily harm to a peace officer engaged in his or her official duties." And we have held that the term "maliciously," as applied to aggravated battery, "has such common understanding that there is no need to define it in the jury charge." (Citations and footnotes omitted.) *Ellis v. State*, 245 Ga. App. 807, 808 (2) (539 SE2d 184) (2000). In addition, the trial court charged the jury that the State must prove each element of the crimes charged beyond a reasonable doubt. Consequently, we cannot agree with Henderson that the charge constituted plain error. See *Blackwood v. State*, 224 Ga. App. 486, 489 (2) (b) (480 SE2d 914) (1997).

(b) Henderson also argues that her trial counsel's failure to request a charge defining the term "maliciously" and to object properly to the charge as given constituted ineffective assistance of counsel. But decisions concerning which charges to request involve trial tactics, to which we must afford "substantial latitude" in our review. *Love v. State*, 268 Ga. 484, 486 (4) (490 SE2d 88) (1997). "Decisions as to which charges will be requested . . . fall within the realm of trial tactics and strategy. They provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them. [Cit.]" *Champion v. State*, 238 Ga. App. 48, 49 (1) (b) (517 SE2d 595) (1999). So viewing trial counsel's failure to object, we cannot agree that her failure to object constituted deficient performance, especially given our holding in *Ellis*, supra, that it is not error to fail to define the term "maliciously" as it

applies to the offense of aggravated battery. Id.

Furthermore, Henderson's acts were neither provoked nor justified. On the contrary, Perkins and the other officers present at the scene were attempting to assist Henderson and to keep her from harming herself. Their decision to arrest Henderson arose only after she bit Perkins. While she might argue that she *thought* she was justified in biting Perkins, her misguided thoughts arose only out of her own voluntary intoxication, which is not an excuse for any criminal act. OCGA § 16-3-4 (c); *Bailey v. State*, 198 Ga. App. 632, 633 (2) (402 SE2d 363) (1991). Under the circumstances of this case, she has not shown a reasonable probability that an instruction on the definition of "maliciously" as applied to the charge of aggravated battery would have resulted in an acquittal.

Henderson also argues that she was denied effective assistance of counsel, because her trial counsel made an erroneous statement of the law concerning intent, as it relates to aggravated battery, during closing argument. Indeed, trial counsel argued that with respect to both the charges of obstruction and aggravated battery, the jury had "to find that [Henderson] knew what she was doing and she intended to do it." This definition was rejected in *Wade*, supra, as correctly pointed out by Henderson. In addition, we note that, although the legal definition is clearly set forth in *Wade*, trial counsel stated during closing argument that she was unable to find the legal definition of malice and went on to define it herself to the jury as "evil, intentional, purposefully wrong." But despite trial counsel's erroneous statement concerning intent, as discussed above, even if the jury had been instructed and had heard proper argument concerning the definition of "maliciously," we cannot say that a reasonable probability exists that the outcome of the trial would have changed; the record does not show either that Henderson acted with justification or that she was provoked by Perkins.

(c) Henderson argues that charges on accident and knowledge requested by trial counsel "reduced the mens rea requirement from the high threshold of malice to either one of knowledge or criminal negligence." The trial court did charge the jury, as requested by Henderson, that if the incident "occurred as a result of misfortune or accident and not as the result of criminal undertaking or a criminal negligence, then it would be your duty to acquit." But this charge did not diminish the State's burden of proving all elements of the crimes charged beyond a reasonable doubt, and as discussed above, the decision concerning which charges to request constituted trial strategy. We cannot conclude that these decisions were "so patently unreasonable that no competent attorney would have chosen them. [Cit.]" *Champion*, supra at 49. Henderson has shown no basis for reversal on ineffectiveness grounds.

3. Henderson correctly argues that her convictions on the obstruction charge and the aggravated battery charge should have merged for sentencing purposes. The same evidence was used to support both the obstruction and the aggravated battery charges, as they were set forth in the indictment: the single act of biting Perkins. One crime was therefore included in the other, and Henderson cannot be sentenced for both. OCGA § 16-1-7 (a). See *Riden v. State*, 226 Ga. App. 245, 246 (2) (486 SE2d 198) (1997).

Although the State conceded below that the two convictions should merge for sentencing, the trial court did not merge the convictions. The State now argues that the merger was not required under reasoning in cases such as *Evans v. State*, 271 Ga. 614 (523 SE2d 850) (1999), and *Wright v. State*, 243 Ga. App. 167 (532 SE2d 724) (2000). Those cases are distinguished on their facts. In *Evans*, the Supreme Court concluded that the appellant's convictions for armed robbery and malice murder did not merge, because the jury could have believed that one crime was completed before the other. Id. at 616. And in *Wright*, the charged crimes, aggravated assault and aggravated battery, did not merge because 24 out of 26 stab wounds established a separate aggravated assault charge. Id. at 169. But here, one single act and one single injury formed the basis for both charges against Henderson. Merger was required. We therefore affirm the trial court's denial of Henderson's motion for new trial but remand this case to the trial court for sentencing in accordance with this opinion.

*Judgment affirmed in part, vacated and remanded with direction. Barnes and Phipps, JJ., concur.*

DECIDED NOVEMBER 5, 2001 —

*Ruth P. Marks*, for appellant.
*Patrick H. Head, District Attorney, Andrew J. Saliba, Dana J. Norman, Assistant District Attorneys*, for appellee.
*James C. Bonner, Jr.*, amicus curiae.