## S02A0953. TESFAYE v. THE STATE.
### (569 SE2d 849)

BENHAM, Justice.

Appellant Bruke Tesfaye was found guilty of and sentenced for committing malice murder, armed robbery, kidnapping, kidnapping with bodily harm, and possession of a firearm in the commission of a crime.[1] After reviewing the enumeration of errors set out by appellant, we affirm the judgment of conviction, but remand the case to the trial court for resentencing on the armed robbery conviction.

1. The State presented evidence that two men, one of whom was carrying a gun, entered a Fulton County liquor store in April 1997 and pushed a store employee into a walk-in cooler. One perpetrator removed money from the cash register while the other forced the store owner, Prem Sharma, into a back room where a safe was located. The keys to Sharma's vehicle were taken from him, and he was beaten about his face and head and fatally shot in the chest. The two men drove away from the liquor store in the victim's van and abandoned it several blocks away. Fourteen months later, appellant Bruke Tesfaye walked into the American embassy in Addis Ababa, Ethiopia, reported his involvement in a murder in a liquor store in Atlanta, and asked for assistance in returning to Georgia. While on the airplane from Ethiopia to the United States, appellant told the FBI agent accompanying him of his involvement in the crimes com-

---

[1] The crimes were committed on April 14, 1997, and appellant was arrested in June 1998. Following a special presentment, the Fulton County grand jury returned a true bill on a nine-count indictment charging appellant with malice murder; felony murder with armed robbery in which U. S. currency was taken as the underlying felony; felony murder with aggravated assault as the underlying felony; armed robbery in which U. S. currency was taken; armed robbery in which keys to a van were taken; kidnapping with bodily injury of the murder victim; aggravated assault of the murder victim; kidnapping of a store employee; and possession of a firearm during the commission of a crime. Appellant's trial commenced January 11, 2000, and concluded with the jury's return of its guilty verdicts on all nine counts on January 14. On February 2, appellant was sentenced to life imprisonment for the malice murder conviction. The trial court vacated the two felony murder convictions and the convictions for the felonies underlying both felony murder convictions. The trial court imposed a consecutive life sentence for the kidnapping with bodily injury of the murder victim; a consecutive twenty-five year sentence for the armed robbery in which the keys were taken; a consecutive ten-year sentence for the kidnapping of the employee; and a consecutive five-year sentence for the firearm possession. Appellant's trial counsel filed a motion for new trial on February 17, and new counsel filed a motion for new trial on February 28 and an amended motion on May 1, 2001. The trial court denied the motions on July 27, 2001, and issued another order denying the motions on September 26, 2001, because the July 27 order had been misplaced. Counsel was permitted to withdraw from representation and appellant, acting pro se, filed a notice of appeal on October 9. The appeal docketed pursuant to that notice of appeal was struck from this Court's docket and remanded to the trial court on January 18, 2002, when appellant sought the appointment of appellate counsel. The trial court appointed appellate counsel who, in accordance with the January 18 order of this Court, filed a timely notice of appeal on February 15. The appeal was docketed in this Court on March 14, 2002, and submitted for decision on the briefs.

mitted at the liquor store. Appellant repeated his story to another FBI agent who met the plane when it landed in the United States, telling the second agent he had taken approximately $340 from the cash register while his accomplice attempted to get the victim to open the store safe. At appellant's trial, the two FBI agents and the embassy employee testified to what appellant had told them about his participation in the liquor store armed robbery that resulted in the death of Prem Sharma. In addition, a regular customer of the victim's liquor store testified he saw two men, one of whom he identified as appellant's co-indictee, just outside the liquor store the morning the owner was killed. While he could not identify the second man because he did not see his face, the witness stated the second man called the witness by name and, upon reflection, the witness realized from the man's accent, walk, eyes, and association with the co-indictee, that the man was appellant. The evidence was sufficient to authorize appellant's convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 16-2-20 (party to a crime); *Howze v. State*, 201 Ga. App. 96, 97 (410 SE2d 323) (1991) (if accomplice carries a gun, defendant need not have actual possession of the firearm to be found guilty of armed robbery and possession of a firearm during the commission of a crime); *Clements v. State*, 84 Ga. 660 (1) (11 SE 505) (1890) (robbery occurs when perpetrators keep victim away from nearby site from which the victim's property is taken).

2. Appellant complains the testimony concerning the statements he made to the FBI agents was not admissible because the statements were made after he had invoked his right to counsel. At a pretrial hearing, the FBI agent who met appellant in Ethiopia and accompanied him on the plane to the United States testified that appellant was not under arrest since the agent had no authority to arrest appellant or have him arrested in Ethiopia because Ethiopia has no extradition treaty with the United States. Nonetheless, the agent had read the *Miranda* rights to appellant when he met him at the American embassy and all questioning had ceased when appellant declined to make a written statement without counsel. The next day, several hours into the airline flight from Ethiopia, appellant began telling the agent about his life and talked about the liquor store shooting and robbery. The FBI agent testified he asked no questions of appellant. The second FBI agent testified she met appellant's plane when it landed in the United States and appellant told her of his involvement in the crimes at issue after having been informed of his *Miranda* rights and executing a waiver of rights. The trial court found that appellant initiated the airplane conversation the day after he declined to execute a written statement without counsel and thereby knowingly and intelligently waived his previously-invoked right to have counsel present during custodial interrogation.

Custodial interrogation of an accused must cease upon the accused's invocation of the right to counsel, but an accused may waive the previously-invoked right by initiating further communication with the police. *Edwards v. Arizona*, 451 U. S. 477, 484-485 (101 SC 1880, 68 LE2d 378) (1981); *Walton v. State*, 267 Ga. 713 (3) (482 SE2d 330) (1997). The trial court's determination that appellant initiated the conversation with the FBI agent on the airplane is supported by the evidence and therefore is not clearly erroneous. *White v. State*, 255 Ga. 210 (2) (336 SE2d 777) (1985). Accordingly, the trial court did not err when it declined to suppress appellant's statements to the agent. Since appellant waived his previously-invoked right to have counsel present during custodial interrogation, was again informed of his rights, and executed a written waiver of rights, his statement to the second FBI agent upon arrival in the United States was also correctly found to be admissible. See *Ottis v. State*, 269 Ga. 151 (2) (496 SE2d 264) (1998); *Guimond v. State*, 259 Ga. 752 (2) (386 SE2d 158) (1989).

3. The indictment charging appellant with malice murder alleged that appellant and his co-indictee "did unlawfully and with malice aforethought cause the death of Prem Sharma, a human being, by shooting him with a firearm. . . ." Because the means of killing were set out in the indictment, appellant posits that the means are an essential element of the crime and, relying on the trial court's duty to give appropriate instructions as to the law on each substantive point of the case (*Driver v. State*, 194 Ga. 561 (1) (22 SE2d 83) (1942)), contends the trial court was required to instruct the jury specifically that the jury had to find the victim had died as a result of having been shot in order to find appellant guilty. Appellant maintains such an instruction was important in the case at bar because the forensic pathologist who performed the victim's autopsy testified that the victim could have bled to death from the head lacerations he suffered. However, the pathologist's testimony was clarified when he stated unequivocally that the gunshot wound to the chest was the "primary and severe and obvious cause of his death," with the head injuries being a "significant condition." In light of the expert's testimony and the fact that the jury was given the pattern jury instruction on malice murder, was told that the State was required to prove every material allegation of the indictment and every essential element of the crime beyond a reasonable doubt, and was informed that appellant could not be convicted unless each element was proven beyond a reasonable doubt, there was no reversible error as a result of the trial court's failure to inform the jury that they had to find the victim had died from a gunshot wound before they could convict appellant of malice murder. See *Henderson v. State*, 252 Ga. App. 295 (1) (a) (556 SE2d 204) (2001).

4. Appellant was charged with two counts of armed robbery of Mr. Sharma. One count charged appellant and his co-indictee with taking United States currency from the victim, and the other count charged the perpetrators with taking the victim's keys and van. The "currency" armed robbery count also served as the predicate felony of one of the two felony murder counts lodged against appellant. Upon appellant's conviction for malice murder, the trial court vacated the two felony murder convictions and also vacated the convictions for the predicate felony of each felony murder count, including the "currency" armed robbery count. Appellant contends the "keys and van" armed robbery conviction should also have been vacated because there was only one armed robbery since there was only one victim. While we agree with appellant that he could not be convicted of two armed robberies in the case at bar, we disagree with his conclusion that both armed robbery convictions should be vacated.

When a victim is robbed of more than one item in a single transaction, only one robbery may be charged. *Bland v. State*, 264 Ga. 610 (4) (449 SE2d 116) (1994). The taking of property in a single transaction from a victim at two sites under the same roof constitutes one robbery. *Randolph v. State*, 246 Ga. App. 141 (1) (538 SE2d 139) (2000) (one armed robbery occurred when property was taken from victim at one end of store and more property was taken from victim at other end of store). Using a gun to take cash from the cash register and then to take the victim's keys from him in the store's backroom in order to use the van constituted one armed robbery. Id. Thus, appellant is correct that only one armed robbery occurred. That determination, however, does not require that appellant's "keys and van" armed robbery conviction be vacated because the trial court vacated the "currency" armed robbery. Rather, our review shows the trial court erred when it vacated appellant's "currency" armed robbery conviction under the belief it was included in appellant's malice murder conviction. For the reasons that follow, we conclude appellant should stand convicted of one count of armed robbery that includes the taking of the currency and the keys and van.

When guilty verdicts are returned on both felony murder and malice murder counts in a case where there is only one death, it is proper to do as the trial court did and sentence the defendant on the malice murder guilty verdict and treat the felony murder verdicts as surplusage. *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). However, the predicate felony of the felony murder charge does not merge as a matter of law and is vacated only if it merges as a matter of fact into the malice murder conviction. Id. The "currency" armed robbery did not merge as a matter of fact into the malice murder conviction and therefore could not be vacated pursuant to OCGA § 16-1-7 (a). See *Lemay v. State*, 264 Ga. 263 (1) (443 SE2d 274) (1994). As a

result, a sentence could have been imposed on the guilty verdict returned on the "currency" armed robbery count, but the two armed robbery guilty verdicts could result in the imposition of only one sentence for armed robbery. *Creecy v. State*, 235 Ga. 542 (5) (221 SE2d 17) (1975); *Randolph v. State*, supra, 246 Ga. App. at 144. Appellant was sentenced on only one armed robbery guilty verdict and he was not entitled to vacation of both armed robbery convictions.

5. However, the sentence imposed on the armed robbery conviction is also at issue. The trial court sentenced appellant to a term of 25 years' imprisonment which, appellant correctly points out, exceeds the 20-year statutory maximum sentence for a term of years for armed robbery. See OCGA § 16-8-41 (b). The State does not dispute the fact that the maximum term-of-years sentence that can be imposed for armed robbery is 20 years. The sentence imposed for armed robbery must be vacated and the case remanded for resentencing on that conviction.

6. Lastly, appellant contends he was denied his constitutional right to confront a witness when the trial court permitted an eyewitness to tell the jury what he heard one perpetrator say to the other[2] as they ran from the liquor store to the victim's van. The declarant/perpetrator did not testify at appellant's trial. Over objection, the trial court admitted the contested testimony as part of the res gestae of the crime. The trial court's determination of admissibility will not be disturbed on appeal unless it was clearly erroneous. *Andrews v. State*, 249 Ga. 223, 228 (290 SE2d 71) (1982).

Georgia's "res gestae" statute provides that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." OCGA § 24-3-3. One of the two kinds of res gestae evidence recognized by Judge Daniel in the Georgia Handbook on Criminal Evidence (2002 ed.) encompasses the "circumstances, facts and declarations which grow out of the main criminal act, are contemporaneous with it, and serve to illustrate it." Id. at § 4-58. "Acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae." *Floyd v. State*, 143 Ga. 286, hn. 2 (84 SE 971) (1915). "[D]eclarations are pertinent [as part of the res gestae] if they are uttered contemporaneously with pertinent acts, and serve to account for, qualify, or explain them, and are apparently natural and spontaneous." *Cox v. State*, 64 Ga. 375, 410 (1879), quoted in *Andrews v. State*, supra, 249 Ga. at 226. The remark made by one perpetrator to the other as they

---

[2] The witness testified that one perpetrator said to the other, "Oh, s—t, why did you do that, man?"

fled from the liquor store where one of them had shot the store owner to the van they were going to steal to make their getaway is such a declaration and was admissible pursuant to OCGA § 24-3-3. Since the trial court was correct that the statement was admissible as part of the res gestae, appellant's contention that he was denied his right of confrontation is without merit. *Cox v. State*, 274 Ga. 204 (3) (553 SE2d 152) (2001).

*Judgment of conviction affirmed. Sentence affirmed in part and vacated in part and case remanded for resentencing. All the Justices concur.*

DECIDED SEPTEMBER 16, 2002.

*Zell & Zell, Rodney S. Zell*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.