## A96A1894. HARRIS v. THE STATE.
(478 SE2d 458)

POPE, Presiding Judge.

Defendant was indicted by a grand jury for the offenses of cruelty to children (Counts 1 and 2), aggravated battery (Count 3) and aggravated assault with a deadly weapon (Count 4). She was tried before a jury and found guilty of the first three counts and the lesser-included offense of battery on the fourth count. She appeals her convictions on Counts 2 and 3 on the grounds that the evidence was insufficient to support the verdict.

"Where a criminal conviction is challenged on the basis that the evidence is insufficient, the appellate court views the evidence in the light most favorable to the finding of guilt to determine whether there was sufficient evidence for a rational trier of fact to conclude that the defendant was guilty beyond a reasonable doubt. [Cits.]" *Stokes v. State*, 204 Ga. App. 586, 587 (2) (420 SE2d 84) (1992).

"Although a conviction based on circumstantial evidence is authorized only if the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused (OCGA § 24-4-6), if the evidence meets this test, circumstantial evidence is as probative

as direct evidence. Whether this burden has been met is a question for the jury. When the jury is authorized to find the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed unless the verdict is insupportable as a matter of law." (Citations, punctuation and indention omitted.) *Mason v. State*, 199 Ga. App. 691, 692 (1) (405 SE2d 747) (1991).

The evidence at trial, viewed in the light most favorable to the jury verdict, shows that mid-afternoon on October 28, 1994, an officer of the Commerce Police Department received a 911 telephone call from defendant seeking help for her 24-month-old son, who had been severely burned by hot grease. Testimony indicated defendant told the 911 operator that the child had been injured by a pan of hot grease when defendant bumped into the child. However, when police arrived at the scene defendant told an officer that she did not really know what happened to the child, "that it must have pulled a pan of grease on its head." This explanation was repeated to a second police officer also at the scene and to a nurse at the hospital where the child was first taken for treatment. Evidence presented at trial showed that the child was not tall enough to reach the top of the stove.

A few weeks after the incident, defendant gave a statement to an investigator offering another explanation of the incident. Defendant stated she had been cooking french fries on the stove when she left the kitchen to answer the telephone; that while talking on the phone she smelled smoke or fire; that when she returned to the kitchen she found the frying pan on fire; that she grabbed the pan off the stove with a wet dish rag; that when the pan started burning her hands she tilted it and let it go; and that she then bumped into her son, who was either behind or beside her, spilling the grease on him. However, the officers who arrived at the scene testified there were no french fries at the scene either done or uncooked, there was no smell or observance of smoke or fire in the kitchen, there was no sign of a dish rag or potholder in the area, and the defendant did not have any burn marks or blisters on her hands, feet or legs which would have been consistent with her burning her hand or dropping the skillet. The officers did observe a cast iron skillet and grease on the kitchen floor. The grease was in a puddle with very few splatter marks. Defendant later added more details to this version of the incident, none of which could be verified by the officers who responded to the emergency call.

Medical testimony indicated that defendant's son received second and third degree burns over fourteen percent of his body, primarily to his face, neck, arms, upper chest and back. No burns were noticed on the top of his head or his legs or feet. The location of the burns indicated that the grease had come straight at the child from

the front, or perhaps from a slight angle above him, but with a definite forward propulsion. Thus, the burn marks were inconsistent with the theory that the grease had been spilt or dripped on the child from above.

While being treated by a paramedic at the scene and at the hospital, it was noted that defendant's son had more than 20 whip marks on his inner thighs, buttocks and near his perineum. Medical testimony indicated that the whippings had been administered at two different times. Defendant first claimed that her son had received the marks about a week earlier from sitting on the potty, but later admitted she had beat him because he had soiled his diapers. She also admitted that she got mad about her son constantly "messing in his diaper" and that she usually just "pop[s] him with her hand." These beatings formed the basis for defendant's convictions on Counts 1 and 4 of the indictment.

Although defendant's son stayed in the hospital for a little over one month and underwent four different skin graft operations, defendant's son's physician did not recall ever having spoken to defendant.

OCGA § 16-5-70 (b) provides: "Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." "For purposes of this Code section, 'malice' in the legal sense, imports the absence of all elements of justification or excuse and the presence of an actual *intent* to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense. [Defendant's] intent was a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. The jury's inherent finding of intent will not be set aside unless it is clearly erroneous. . . ." (Citations and punctuation omitted.) *Rigenstrup v. State*, 197 Ga. App. 176, 180 (4) (398 SE2d 25) (1990). See also *Jarrard v. State*, 152 Ga. App. 553 (7) (263 SE2d 444) (1979) with regard to defendant's aggravated battery conviction.

"Although the circumstantial evidence must exclude every other reasonable hypothesis save [defendant's] guilt, it need not exclude every inference or hypothesis. [Cit.]" *Mason v. State*, 199 Ga. App. at 692. We find the trial transcript reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that defendant's son's injuries were not accidental, and defendant was guilty beyond a reasonable doubt. *Stokes v. State*, 204 Ga. App. at 587 (2); *Jarrard v. State*, 152 Ga. App. at 555 (7); *Jackson v. Vir-*

*ginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
*Judgment affirmed. Andrews and Smith, JJ., concur.*

DECIDED NOVEMBER 22, 1996.

*Donna L. Avans*, for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.