A98A1470. SIMS v. THE STATE.
(507 SE2d 845)

BEASLEY, Judge.

William James Sims, Jr. was convicted of aggravated assault with a deadly weapon (OCGA § 16-5-21 (a) (2)), aggravated assault with intent to murder (OCGA § 16-5-21 (a) (1)), aggravated battery (OCGA § 16-5-24), and two counts of cruelty to children (OCGA § 16-5-70 (b)) arising out of his attempt to kill the mother of his children with a knife. He was sentenced to 20 years confinement for aggravated assault and 20 years confinement for aggravated battery to be served concurrently. The court merged the count of aggravated assault with intent to murder and the count of aggravated battery. Sims was given two ten-year sentences for cruelty to children, to run concurrently, but consecutive to his twenty-year sentences. He appeals only the convictions of cruelty to children, claiming (i) there was insufficient evidence to support the convictions and (ii) the court erred in allowing hearsay from one of the children.

Construing the evidence in favor of the verdict, Sims and Dovie Kelley had a relationship for at least six to eight years which produced two daughters. They were approximately ages seven and five at the time of the incident, but the couple no longer lived together.

On the evening of June 30, 1995, after going out to dinner, the two girls and their mother had fallen asleep watching television on the couch in the living room of Kelley's mobile home. The doors were secure, and Sims did not have a key. At about 12:45 a.m. the girls were awakened by Sims, who was standing over their mother in the dark waving a knife and threatening to kill her. They saw their mother jump up and run out the front door with Sims chasing her. The girls followed onto the front porch, but their mother told them to go back inside and close the door.

Sims viciously stabbed Kelley on the porch immediately outside the front door, and after she jumped off the porch he continued stabbing her on the ground nearby. The struggle lasted between 30 minutes and an hour. The girls did not know while they were inside whether their mother was being killed or not. Although Kelley does not remember getting stabbed while on the couch or in the home, blood was found on the floor next to the couch and inside the front door.

Kelley told Sims she needed to go to the hospital because she felt she was dying and was so weak she could not stand. Sims put the girls and their bleeding mother into Kelley's car, drove around aimlessly for awhile, then stopped at a stranger's house and walked away. The seven-year-old girl had to knock on the stranger's door at 2:30 a.m. to get help for her mother. She told the police officer who responded to the call, "Daddy broke in the trailer, started stabbing

my mother, forced us into the car and drove us here." He did not know if her statement meant the child had actually seen any of the stabbing. The officer testified that when he found Kelley, "[s]he had been cut from head to toe and was covered in blood. Her panties were torn down by her legs, pulled around her knees, covered in blood." He was worried Kelley might die from the injuries he observed.

Kelley was treated at the hospital for one laceration on each side of her neck, stab wounds on the right side of her chest, both sides of her back, in her stomach, in the right side, on the right arm, on both legs, and on her hands. The wound in the stomach penetrated her abdominal cavity and was life threatening. One cut on her neck went all the way around the front, from one side to the other. Blood was found in the car and on Sims' clothing and shoes.

1. Sims contends the evidence is insufficient to authorize convictions for cruelty to children because there was no evidence that the children suffered excessive mental pain and that Sims acted maliciously in causing it.

OCGA § 16-5-70 (b) provides: "Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." To prove the crime, "there must be evidence establishing the age of the child[ren], that the child[ren] suffered physical or mental pain, that the pain was cruel or excessive, that the defendant caused the pain, and that the defendant acted maliciously in so doing."[1]

(a) "[T]he determination of what is cruel or excessive physical or mental pain is to be made by the jury."[2] "Cruel" and "excessive" are adjectives which inherently require a consideration of degree; the law does not set a bright line but leaves to the trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts "cruel" or "excessive" pain (in this instance, mental rather than physical pain).[3] There will be a gray area where some would say it is and some would say it is not, and neither is wrong as a matter of law. There will be other areas on each end of the scale. On the pole with which we are concerned here (and will be whenever there is an appeal from a conviction), there will be instances where the law would not countenance a finding of cruel or excessive pain. We must determine only whether the circumstances here, taking into account the evidence in favor of the finding and all reasonable infer-

---

[1] *Brewton v. State*, 266 Ga. 160 (1) (465 SE2d 668) (1996).

[2] *Hopkins v. State*, 209 Ga. App. 376, 377 (1) (434 SE2d 74) (1993).

[3] Compare *Furman v. Georgia*, 408 U. S. 238, 277 (92 SC 2726, 33 LE2d 346) (1972) (Brennan, J., concurring) (severe punishment is in part determined by "contemporary society").

ences from that evidence, would prohibit the finding made by the jury.[4]

The only direct evidence presented about the observed behavior of Sims' daughters in reaction to the incident was that the older child appeared outwardly to be "pretty calm" when talking to the police and the younger girl remained in the back seat of the car until her mother was taken by the ambulance. Sims contends this is insufficient evidence of "excessive mental pain." But in isolating these two facts he ignores the context.

The two girls witnessed a terrifying criminal attack when their father threatened to kill their helpless mother with a knife.[5] As to the aggravated battery, it is reasonable to infer from the blood stains that Kelley was stabbed before she got outside. This would mean that the girls also witnessed their father commit aggravated battery by actually stabbing their mother in their presence. Even if they did not, they did see the results of the vicious violence on their mother's body, they endured the indecisive car ride when she was suffering extreme injuries, and they were stranded with her, without help, in the middle of the night.

In *Hall v. State*[6] a father who shot his son in front of his two daughters contended there was insufficient evidence to support convictions of cruelty to children. Hall's daughters did not "presently exhibit overt manifestations of having been traumatized by the event."[7] Two experts testified about how children may "repress [seeing a sibling murdered] and show no immediate outward signs of trauma, but that it often emerges years later," and that there may be "unconscious denial . . . with no outward symptoms until the child was older."[8] This testimony was offered to show that children's lack of physical symptoms of trauma at the time do not preclude the internal experience of cruel and excessive mental pain.

The court concluded that the jury was authorized to find that the girls suffered "cruel and excessive mental pain." Likewise, Sims' jury here was authorized to find that Sims' daughters suffered exceptional mental pain from witnessing this episode of extreme domestic violence by their father on their mother. The absence of similar expert testimony here does not preclude the jury's finding. Expert testimony is not necessary when the jurors may make the determina-

---

[4] See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] OCGA §§ 16-5-20; 16-5-21. " 'Aggravated assault with a deadly weapon is completed when a simple assault is committed by means of a deadly weapon,' [cit.], and neither type of assault requires physical contact with the victim." *Tuggle v. State*, 145 Ga. App. 603, 604 (1) (244 SE2d 131) (1978).

[6] 261 Ga. 778 (415 SE2d 158) (1991).

[7] Id. at 781 (7) (a).

[8] Id. at 782.

tion on their own.[9]

(b) As for malice, "[f]or purposes of this Code section, malice in the legal sense imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense. Intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[10] Given Sims' blatant disregard for his children and the plain facts that he allowed them to know he was then and there trying to kill their mother, forced them to observe the results and compelled them to join the prolonging of her unaided condition, we find no lack of evidence of malice.

2. Sims contends the child's statement to the police was not admissible under the child hearsay exception found in OCGA § 24-3-16. That section provides: "A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." The underlined phrase was added by amendment in 1995.[11]

The Supreme Court recently held that the amendment "violates well established principles of equal protection, . . . [and] must be struck down as unconstitutional."[12] Thus, the amended Code section cannot be used as a basis for admitting the child's testimony as a witness to Sims' physical abuse of Kelley. It is also inapplicable as a ground for admitting the child's statement as a victim of cruelty to children because it allows testimony only from the victim of sexual conduct or physical abuse.[13] Sims' daughters were the victims of mental cruelty.

The State argued at the hearing before this Court that the statement was admissible as part of the res gestae. OCGA § 24-3-3 pro-

---

[9] See *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981) (expert opinion admissible where "conclusion is beyond the ken of the average layman"); *Fordham v. State*, 254 Ga. 59 (4) (325 SE2d 755) (1985).

[10] (Punctuation omitted.) *Brewton*, supra, 266 Ga. at 161 (2), quoting *Stokes v. State*, 204 Ga. App. 586 (2) (420 SE2d 84) (1992); see also *Rigenstrup v. State*, 197 Ga. App. 176, 180 (4) (398 SE2d 25) (1990); *Harris v. State*, 223 Ga. App. 661, 663 (478 SE2d 458) (1996).

[11] Ga. L. 1995, p. 937, § 1.

[12] *Woodard v. State*, 269 Ga. 317, 323 (3) (496 SE2d 896) (1998).

[13] OCGA § 24-3-16.

vides "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." As explained in *Brantley v. State*,[14] "[w]hat the law altogether distrusts is not after-speech but afterthought. In cases when a statement is narrative rather than exclamatory, the circumstances must be closely scrutinized, because narrative is generally the result of afterthought. If the declarations appear to spring out of the transaction — if they elucidate it — if they are voluntary and spontaneous, and if they are made at a time so near to it, as reasonably to preclude the idea of deliberate design, then they are to be regarded as contemporaneous. However, no precise time can be fixed a priori when the res gestae ends, but each case must turn on its own circumstances, the inquiry being rather into events than to the precise time which has elapsed."[15] One question is, were the jurors "authorized to believe that [the statements] were made without premeditation or artifice, and without a view to the consequences?"[16]

Statements by the victim to a witness, including the police very shortly after the events, have been held properly admissible.[17] "The fact that some of the statements were in reply to questions of the witnesses would not render them inadmissible."[18]

The events leading to the daughter's statement were all part of one continuous transaction and closely connected in time. The young girl made the statement at the end of a two-hour ordeal in response to the first questions asked of her by police. She had been in the company of the estranged father until only minutes before. There was no evidence of coaching, promises or threats. She was young, and there is no evidence of knowledge of the consequences of her statement. It was admissible.

Moreover, the girl was available to testify. "[Sims] had the opportunity to cross-examine her regarding her allegations, providing him with an additional safeguard to his right to a fair trial."[19] Sims' reli-

---

[14] (Citations and punctuation omitted.) 177 Ga. App. 13, 14-15 (2) (338 SE2d 694) (1985).

[15] See also *Moseley v. State*, 179 Ga. App. 698, 699 (2) (347 SE2d 686) (1986) (victim's first opportunity to report crime outside presence of perpetrator is admissible as res gestae).

[16] (Punctuation omitted.) *Andrews v. State*, 249 Ga. 223, 227 (290 SE2d 71) (1982), quoting *Hart v. Powell*, 18 Ga. 635 (1855).

[17] *Haralson v. State*, 234 Ga. 406, 407-408 (3) (216 SE2d 304) (1975); *Basu v. State*, 228 Ga. App. 591, 593 (1) (492 SE2d 329) (1997); *McKinney v. State*, 218 Ga. App. 633, 634 (1) (463 SE2d 136) (1995).

[18] *Littles v. State*, 236 Ga. 651, 652 (2) (224 SE2d 918) (1976). See also *Kirkland v. State*, 206 Ga. App. 27, 30 (9) (424 SE2d 638) (1992) (witness properly allowed to testify as to statements made by victim's five-year-old child at scene immediately after collision).

[19] *Heard v. State*, 221 Ga. App. 166, 168 (471 SE2d 22) (1996).

ance on *Rolader v. State*[20] is misplaced.[21]
 *Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 9, 1998 — 

*Jo C. Nesset-Sale*, for appellant.
*Harry N. Gordon, District Attorney, John A. Pursley, Assistant District Attorney*, for appellee.

---

[20] 202 Ga. App. 134 (413 SE2d 752) (1991).
[21] See *Heard*, supra.