## A00A0564. MASHBURN v. THE STATE.
(536 SE2d 208)

RUFFIN, Judge.

A jury found Ricky Lee Mashburn guilty of aggravated battery and cruelty to children. On appeal, Mashburn contends that the evidence was insufficient to support the aggravated battery conviction. He also asserts that the trial court erred in admitting certain evidence and in failing to merge the aggravated battery and cruelty to children convictions for sentencing purposes. For reasons that follow, we affirm.

The record demonstrates that in March 1998, Mashburn and his two children, Nicholas and Mariah, lived with Virginia Woolums and her daughter, Jennifer, in a trailer in Cherokee County. On Saturday morning, March 14, Mashburn, who had been drinking, picked up his five-year-old son, Nicholas, by his arm and hit him on his backside. Nicholas fell, and Mashburn picked him up and hit him again.

Later that afternoon, Woolums's brother-in-law, Tim Owens, took Mariah and Jennifer to his home to spend the night. Nicholas was not allowed to go because he was being punished. When Owens picked up the girls, he noticed that Nicholas had a small bruise on his face and that his lips were swollen. Owens told Mashburn and Woolums that Nicholas should be taken to the doctor, and Mashburn responded, "This is nothing. You should have seen him a week ago." Mashburn and Woolums then told Owens that Nicholas's appearance was due to medication that he had been taking.

After the girls left, Mashburn continued to "punish" his son. According to Woolums, Mashburn "spanked" Nicholas to the point that he could no longer cry. Mashburn hit Nicholas with his belt and his hand, and he kicked him. At least five times that day, Mashburn forced Nicholas to walk back and forth in the trailer while Mashburn hit him with a belt. Woolums estimated that each "walk" lasted 30 to 45 minutes. Woolums testified that, at one point, Mashburn pulled Nicholas's pants down to "spank" him, and she saw bruises on the

boy. Apparently concerned by the extent of the bruising, Woolums reminded Mashburn that Nicholas had a doctor's appointment that week. Mashburn said that he would cancel the appointment.

The next day, Nicholas's punishment continued. Woolums testified that Mashburn told his son that "he wasn't a baby and he wasn't going to be treated like a baby anymore and that he was going to grow up and that [Mashburn] was going to teach him." So, a few hours after breakfast, Nicholas was made to walk, and Mashburn continued to hit him. According to Woolums, the beatings lasted "[p]retty much all day."

On Monday, March 16, Nicholas woke up with a swollen face and a bruised body. Woolums testified that she told Mashburn that Nicholas looked bad and that something needed to be done. She claims that she also told him that she was leaving him and that he needed to make arrangements for his son. But Mashburn left Nicholas with Woolums and went to work at a dry cleaners owned by Woolums's mother and stepfather, Mary and Ricky Starnes. Although Mashburn later picked up Mariah and Jennifer, he left his son with Woolums. Rather than returning to his trailer, Mashburn spent the night with his brother, Leonard.

Around 10:30 p.m., Woolums called her stepfather, Ricky Starnes, and told him that she was bringing the children to his house to spend the night. Woolums called later and told Starnes that she had left Nicholas in one of the bedrooms. Starnes got out of bed to check on Nicholas and found him in the bathroom. When Starnes turned on the light, he was appalled by Nicholas's appearance. Starnes testified that "it was horrible. . . . [I]t just took my breath. His face was all swollen up and his mouth was all swollen. One of his eyes was — you know, nearly shut and it scared me to death."

Starnes woke up his wife, Mary, and they took Nicholas downstairs where they lifted his shirt and found additional bruises. Starnes became angry and left to find Mashburn and Woolums. Although Starnes knocked on the door both at the trailer shared by Mashburn and Woolums and at Leonard Mashburn's trailer, he received no response. The next morning, March 17, the Starneses took Nicholas with them to the dry cleaners.

At approximately 8:00 a.m., Mashburn arrived at the dry cleaners. When Mashburn first saw his son, he did not appear surprised by Nicholas's appearance. Mary Starnes asked Mashburn what had happened to Nicholas, and he said that he did not know. Tonya Hansard, Woolums's sister, told Mashburn that he was "crazy as h-e-l-l" if he did not know about the injuries. Mashburn responded that, although he had known about the bruises on Nicholas's body, the child's face had not been like that when he left him with Woolums.

Starnes told Mashburn that the child needed to be taken to the

emergency room and that Nicholas was "not leaving [Starnes's] sight until he goes to the hospital." Starnes and Mashburn then took Nicholas to Scottish Rite Children's Medical Center.

Erin York, the first nurse to see Nicholas, was so upset by the child's appearance, which she described as the "worst child abuse" she had ever seen, that she began to cry. Because York felt that some of Nicholas's injuries might be critical, she called in Dr. Raymond Deebs, the emergency medicine physician.

Dr. Deebs, like York, was "very distraught" by the extent of Nicholas's injuries. In examining the child, he noted that Nicholas "had bruises literally from head to toe," and that his eyes were swollen shut. Some of the bruises were new, but others appeared to be several weeks old. In addition to the bruises on Nicholas's face, he had bruises on his stomach, back, buttocks, scrotum, inner thighs, and scalp. Nicholas also had lacerations or puncture wounds on his face and on his scrotum, a broken arm, a bleeding spleen, and a bleeding intestinal wall.

Dr. Deebs questioned Mashburn about the injuries, and Mashburn provided a "very disjointed" story. At one point, he attributed the child's injuries to medication the child was taking. But Deebs testified that the medication would not have caused the injuries. Deebs diagnosed Nicholas with "battered child syndrome."

A social worker at Scottish Rite called the Cherokee County Sheriff's Department, and Detective Joe McDonald went to the hospital and photographed Nicholas's injuries. Shortly thereafter, Mashburn and Woolums were arrested and charged with aggravated battery and cruelty to children.[1] Following a trial, a jury found both defendants guilty of both charges.

1. In his first enumeration of error, Mashburn contends that the evidence was insufficient to support his conviction for aggravated battery. "[A] person commits the offense of aggravated battery when he . . . maliciously causes bodily harm to another by depriving him . . . of a member of his . . . body."[2] Contrary to Mashburn's contention, the evidence was sufficient to support his conviction for this offense.

On appeal from Mashburn's conviction, we view the evidence in the light most favorable to the jury's verdict, and we neither weigh the evidence nor determine witness credibility.[3] We simply determine whether the evidence is sufficient under the standard enunciated in

---

[1] Mashburn also was charged with a second count of cruelty to children for failing to seek medical treatment for Nicholas, but that count was nolle prossed.

[2] OCGA § 16-5-24 (a).

[3] *Bethel v. State*, 232 Ga. App. 82, 83 (1) (500 SE2d 595) (1998).

*Jackson v. Virginia.*[4] Here, the evidence amply supported Mashburn's aggravated battery conviction. The evidence showed that Nicholas was with Mashburn and/or Woolums from Saturday, March 14, until he was taken to the Starneses' house on Monday, March 16. During that time, Nicholas was subjected to unspeakable abuse at Mashburn's hands, and he suffered a broken arm. Although there is no direct evidence as to how or when Nicholas's arm was broken, the jury was authorized to conclude that the only reasonable hypothesis is that it was broken while Nicholas was being abused.[5]

According to Mashburn, Nicholas's arm had been broken within the past 24 hours, and the evidence showed that he was not with his son during those 24 hours. Thus, he contends, he cannot be responsible for the injury. We note, however, that Dr. Deebs and Dr. Jerry Larrabee estimated that Nicholas's arm had been broken within one to three days before his hospitalization. Thus, Mashburn mischaracterizes the evidence, and the jury was authorized to find that he was, in fact, responsible for his son's broken arm.

Mashburn also asserts that the only evidence linking him to the crime is the uncorroborated testimony of his co-defendant, Woolums. Under OCGA § 24-4-8, an accomplice's testimony must be corroborated,[6] and such "corroborating evidence must be independent of the accomplice's testimony, and it must connect the defendant to the crime or lead to the inference that he is guilty."[7] Only slight evidence is needed for corroboration, and such evidence may be circumstantial.[8] Here, sufficient evidence corroborated Woolums's testimony.

Again, we note that Nicholas was with Mashburn and Woolums the weekend of March 14 and that, during that time, he sustained multiple injuries. Dr. Deebs and Dr. Larrabee confirmed that the injuries were the result of abuse, which corroborates Woolums's testimony.[9] Additionally, Nicholas's sister, Mariah, testified that when Nicholas was in trouble, Mashburn would "spank" him and force him to walk back and forth in the trailer while holding his hands in the air. Jennifer Woolums testified that, on the weekend of March 14, she saw Mashburn pick up Nicholas by one arm and hit him "off his feet."

---

[4] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] See *Chung v. State*, 240 Ga. App. 394, 395-396 (1) (523 SE2d 615) (1999) (evidence supported reasonable hypothesis that the defendant injured his stepdaughter because he was alone with her when she was injured); see also *Harris v. State*, 223 Ga. App. 661, 662-663 (478 SE2d 458) (1996) (circumstantial evidence that mother intentionally burned son sufficient to support conviction for aggravated battery).

[6] See *Hanifa v. State*, 269 Ga. 797, 808 (7) (505 SE2d 731) (1998).

[7] *Black v. State*, 242 Ga. App. 271, 272 (2) (529 SE2d 410) (2000).

[8] Id.

[9] See *Harris v. State*, 180 Ga. App. 56, 57 (1) (348 SE2d 476) (1986) (accomplice's testimony that the defendant abused child was corroborated by medical testimony that child's injuries likely resulted from slapping and burning).

Hansard, Woolums's sister, testified that Mashburn locked Nicholas in his room at night. According to Nicholas's foster mother, the one time she shut the door to his room he became hysterical. Nicholas's biological mother testified that either the first or second night that Nicholas was in the hospital, he wet his bed. According to the mother, he became hysterical and said "I'm going to be in trouble. I'm going to get in trouble. My dad's going to spank me." Given this independent evidence that Mashburn abused his son and that Nicholas was afraid of his father, Woolums's testimony was sufficiently corroborated.[10]

2. Mashburn contends that the trial court erred in admitting into evidence a videotape of a statement given by his co-defendant, Woolums. According to Mashburn, the statement was merely a self-serving declaration, and thus, it should have been excluded.

"It is a well-established general rule that a statement of a party, whether oral or written, which is of a self-serving nature is not admissible in his favor."[11] However, a witness's prior consistent statement is admissible where the veracity of the witness has been called into question and the witness is present at trial and available for cross-examination.[12]

Here, Woolums was present at trial, testified, and was subject to cross-examination. When Mashburn's attorney cross-examined Woolums, he attempted to discredit her earlier testimony by implying that she had lied about having not spanked Nicholas.

Thus, Mashburn placed Woolums's veracity in issue, and the trial court did not err in admitting her prior consistent statement.[13]

3. In his final enumeration of error, Mashburn asserts that the trial court erred in failing to merge the cruelty to children charge with the aggravated battery charge. We disagree.

"Under Georgia law, offenses merge and multiple punishment is prohibited if one offense is included in the other as a matter of law or fact."[14] This Court has recognized that "[c]ruelty to children (OCGA § 16-5-70) and aggravated battery (OCGA § 16-5-24) are not included offenses as a matter of law because the crimes have different elements, prohibit different conduct, and generally protect different classes of victims."[15] But, if the same operative facts are used to prove

---

[10] See id.

[11] (Punctuation omitted.) *Grude v. State*, 189 Ga. App. 901, 903 (2) (377 SE2d 731) (1989).

[12] *Woodard v. State*, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998).

[13] See *Carter v. State*, 238 Ga. App. 708, 710 (2) (520 SE2d 15) (1999).

[14] (Punctuation omitted.) *Green v. State*, 240 Ga. App. 377, 381 (9) (523 SE2d 581) (1999).

[15] *Harmon v. State*, 208 Ga. App. 271, 275 (8) (430 SE2d 399) (1993).

both crimes, the two offenses may merge as a matter of fact.[16]

In this case, the evidence established that, over the course of the weekend, Nicholas was subjected to multiple injuries in addition to his broken arm, including a bleeding spleen, a bleeding intestinal wall, and puncture wounds and lacerations on his face and scrotum. None of these injuries are relevant to Mashburn's aggravated battery conviction, which was predicated upon Nicholas's broken arm. As Mashburn's conviction for cruelty to children is supported by these additional facts, the trial court did not err in failing to merge the two offenses.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 21, 2000.

*Abernathy & Ballinger, Eric A. Ballinger*, for appellant.
*Garry T. Moss, District Attorney, Debra M. Sullivan, Assistant District Attorney*, for appellee.