A02A1393. GRANT v. THE STATE.

(572 SE2d 38)

MIKELL, Judge.

A Floyd County jury convicted Randall Grant of aggravated battery and riot in a penal institution. He appeals from the denial of his motion for new trial, challenging the trial court's jury instructions. Finding no error, we affirm.

The evidence adduced at trial shows that on the date of the incident, Grant had been confined, for several days, in the isolation unit of the Floyd County prison due to a disciplinary problem. Earlier in the day, a correctional officer, William Hamilton, filed a new disciplinary report against Grant. Grant testified that the filing of the report and the warden's denial of his appeal made him "pretty mad" because the infraction would add seven days to his stay in isolation.

Grant started creating a disturbance. Correctional Officer Terry Maynard was able to calm him down once. However, after Maynard left, Grant began to yell, and Maynard told him that if he did not stop, another report would be filed and Grant might be placed in a padded cell. Grant promised to quiet down. However, when Maynard left to advise the warden concerning Grant's behavior, Grant started "hollering and whooping." Maynard proceeded to Grant's cell and discovered that it was being flooded. The water was ankle deep. Maynard could not open the small window inset into the door of Grant's cell, and he became concerned that Grant had jammed it and was harming himself.

Maynard radioed for assistance, and Deputy Warden Barrett arrived at Grant's cell. Barrett instructed Grant to turn the water off and step back from the door. Grant failed to respond. Barrett and Maynard tried, without success, to unlock the window as well as the cell door. Pursuant to Barrett's instructions, Maynard stepped aside. Barrett then placed his foot against the wall to brace himself and pulled on the cell door handle. The door opened approximately six to eight inches, and Barrett saw Grant sitting on his bed, straddling a sheet that had been tied to the window and the bed. Grant had placed his feet against the wall, and he was pulling the sheet toward himself.

When Maynard saw the door open, he instinctively went to assist Barrett. Maynard grabbed the door frame with both hands, but he felt force pulling it closed again. Before he could jerk his hand entirely out of the way, the 275-pound metal door slammed shut, severing the tip of his left ring finger.

Grant admitted that he intentionally flooded his cell; that he tied one end of a bed sheet to the door and the other end to the bed; that he jammed the cell window and door shut; that he knew Barrett and Maynard were outside his cell; and that when the door began to open, Grant "grabbed the sheet and started pulling it closed." He claimed he did not see Maynard's hand and did not intend to harm him.

1. Grant's first and second enumerated errors relate to his conviction of aggravated battery. "A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body. . . ."[1] Grant first challenges the trial court's jury instructions on "malice" and "maliciously." Utilizing the definitions of those terms in Black's Law Dictionary (5th ed. 1979), the court charged the jury as follows:

> The word *malice*: The intentional doing of an unlawful act without just cause or . . . excuse with the intention to inflict an injury or under circumstances that the law will imply an evil intent or the willful doing of an act with knowledge it is liable to injure another person, regardless of the consequences. Maliciously imports a wish to vex, annoy, or injure another or an intent to do a wrongful act and may consist in direct intention to injure or in reckless disregard of another's rights.

---

[1] OCGA § 16-5-24 (a).

During the deliberations, the jury asked the court to define "malicious." The court recharged the jury, repeating substantially the same definitions of "malice" and "maliciously" that it had given earlier. Grant excepted to both the charge and recharge on malice.

Grant claims that the manner in which the court defined "malice" and "maliciously" permitted the jury to convict him of aggravated battery based on acts of criminal negligence, which were not alleged in the indictment. In his second enumerated error, Grant contends that the court compounded its mistake by failing to charge, sua sponte, on the lesser included offense of reckless conduct.

(a) First, we find no error in the trial court's definitions of "malice" and "maliciously." Grant seemingly argues that the latter part of the trial court's charge, that "maliciously" may consist of reckless disregard of another's rights, permitted a conviction based upon a finding of implied malice, whereas OCGA § 16-5-24 should be construed to apply only to acts of express malice. We disagree.

"[J]udicial construction is necessary only when a statute is ambiguous; in fact, when the language of a statute is plain and unequivocal, judicial construction is not only unnecessary but forbidden."[2] The language of OCGA § 16-5-24 is plain and unequivocal. Indeed, the word "'maliciously' has 'such obvious significance and common understanding that there is no need to define it in the jury charge.'"[3]

Of course, having undertaken to define the terms for the jury, the court was obligated to do so correctly.[4] In this regard, our Supreme Court has rejected a charge defining "maliciously" as "intentionally," absent the phrase "without justification or serious provocation."[5] That error did not occur in the case sub judice, as the trial court initially defined "malice" as the "intentional doing of an unlawful act without just cause or excuse." Moreover, we find that the remainder of the charge comports with established definitions: "'[M]alice,' in the legal sense, imports the absence of all elements of justification or excuse and the presence of an actual *intent* to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result."[6] "Malicious" has been defined in the civil context as follows: "In general a malicious act involves all that is usually

[2] (Citation omitted.) *Fleming v. State*, 271 Ga. 587, 589 (523 SE2d 315) (1999).

[3] *Webb v. State*, 228 Ga. App. 624-625 (1) (492 SE2d 312) (1997), citing *Green v. State*, 266 Ga. 550, 551 (468 SE2d 365) (1996); *Jones v. State*, 263 Ga. 835, 838 (439 SE2d 645) (1994); *Gaddis v. State*, 176 Ga. App. 526 (336 SE2d 587) (1985) (physical precedent only).

[4] See, e.g., *Wade v. State*, 258 Ga. 324, 330 (11) (d) (368 SE2d 482) (1988) (incorrect definition of malice as element of aggravated battery required reversal of death sentence).

[5] Id. Accord *Silvers v. State*, 245 Ga. App. 486 (2) (538 SE2d 135) (2000).

[6] *Gaddis*, supra, citing Perkins, Criminal Law (2nd ed.), p. 769.

understood by the term 'wilful,' and is further marked by either hatred or ill will or by such utter recklessness and disregard of the rights of others as denotes a corrupt or malevolent disposition."[7] Given the similarity between the trial court's instructions on "malice" and "maliciously" and accepted definitions of those terms, we find no error.

(b) Nor do we believe that the trial court's charge permitted the jury to convict Grant of aggravated battery based upon an unindicted theory of criminal negligence. The indictment charged that Grant "intentionally caused a prison door to slam shut thereby causing the fingertip of Maynard to be severed. . . ." The court's charge, as quoted above, sufficiently tracked the indictment.

(c) Equally meritless is Grant's argument that the trial court should have charged the jury, sua sponte, on reckless conduct as a lesser included offense of aggravated battery. "Absent a written request for a charge on a lesser included offense, made at or before the close of the evidence, the failure to so charge is not error."[8] In this case, however, Grant relies on the doctrine enunciated in *Tarvestad v. State*[9] that "[t]he trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge."[10] Grant's reliance is misplaced because the defendant in *Tarvestad* made an oral request for a charge on his sole affirmative defense, justification, and that defense was fairly raised by the evidence. By contrast, in the instant case, Grant made no oral request for the charge; and even assuming that a lesser included offense can constitute a "sole defense" within the meaning of *Tarvestad*,[11] there is no evidence to support a justification charge. It is well settled that "[e]ven regarding a sole defense, a charge is not mandated without some evidence to support it."[12] An essential element of the offense of reckless conduct is criminal negligence,[13] and there was no evidence that Grant's actions resulting in the severing of Maynard's fingertip were anything other than intentional. Grant's testimony amply demonstrates his intent:

Q. Now you intended to jam that window, did you not?
A. Yes, sir.

---

[7] (Citation and punctuation omitted.) *Partain v. Maddox*, 131 Ga. App. 778, 783-784 (1) (206 SE2d 618) (1974).

[8] (Punctuation omitted.) *Freeman v. State*, 257 Ga. App. 232, 234 (3) (570 SE2d 669) (2002), citing *State v. Stonaker*, 236 Ga. 1 (222 SE2d 354) (1976).

[9] 261 Ga. 605 (409 SE2d 513) (1991).

[10] (Citations omitted.) Id. at 606.

[11] *Strozier v. State*, 254 Ga. App. 528, 530 (3) (562 SE2d 832) (2002); *Rogers v. State*, 247 Ga. App. 219, 222 (4) (543 SE2d 81) (2000).

[12] *Williams v. State*, 227 Ga. App. 147, 148 (2) (488 SE2d 708) (1997).

[13] OCGA § 16-5-60; *Marion v. State*, 224 Ga. App. 413, 416 (2) (480 SE2d 869) (1997).

Q. And you intended to pull with all your might on those sheets when officers were pulling from the outside?
A. I was trying to keep them from coming in on me. Yes, sir.
Q. And . . . you intended to pull with all your might with those sheets to keep that door closed?
A. Yes, sir.
Q. All right. Everything you did in that cell, you intended to do it?
A. Yes, sir, with the tie. Yes, sir.

Given this evidence that Grant intentionally, and with great force, pulled the door closed, a charge on reckless conduct would not have been authorized. It is irrelevant whether Grant intended to sever Maynard's fingertip, because under Georgia law, "[e]very person is presumed to intend the natural and probable consequences of his conduct, particularly if that conduct be unlawful and dangerous to the safety or lives of others."[14]

Finally, we note that the court did instruct the jury on the lesser included offense of battery, OCGA § 16-5-23.1. Given that the jury rejected the option of finding Grant guilty of battery and found the aggravating factor of malice, it is unreasonable to assume that the jury would have reached a different result had it been charged on the even less culpable misdemeanor of reckless conduct.[15] It follows that the trial court did not err in failing to charge the jury, sua sponte, on the crime of reckless conduct.

2. Grant enumerates two errors with regard to his conviction of riot in a penal institution.

(a) First, Grant argues that the trial court should have charged the jury, sua sponte, on the affirmative defense of justification. Again, he relies on *Tarvestad*. As noted above, *Tarvestad* does not stand for the proposition than an affirmative defense must be charged in the absence of an oral request. In addition, we reject Grant's argument that the defense was raised by his self-serving testimony that he tied the sheets to the door only because he feared that the officers might harm him once they entered his cell. "A person is justified in . . . using force against another when and to the extent that he . . . reasonably believes that such threat or force is necessary to defend himself . . . against such other's imminent use of unlawful force. . . ."[16] There was no evidence that the officers had threatened

---

[14] (Citation and punctuation omitted.) *Helton v. State*, 216 Ga. App. 748, 749 (455 SE2d 848) (1995) (trial court properly refused to charge on accident as a defense to reckless conduct).
[15] See *Christensen v. State*, 245 Ga. App. 165, 166 (1) (a) (537 SE2d 446) (2000).
[16] OCGA § 16-3-21 (a).

the use of unlawful force; Grant testified they merely threatened to put him in a padded cell. Such a threat did not constitute the "imminent use of unlawful force" which would warrant a jury charge on justification. "Without *any* evidence that [Grant's] actions were justified, the trial court's obligation under *Tarvestad* to instruct the jury on the defendant's sole defense dissolved."[17]

In any event, Grant maintained at trial and during his sentencing that the injury to Officer Maynard was a "total accident." The defenses of justification and accident are inconsistent, because an accident defense involves the lack of criminal intent.[18] Grant freely admitted his intent, as recounted above. See Division 1 (c). The trial court did not err in failing to charge the jury, sua sponte, on justification.

(b) Finally, Grant argues that the trial court erred in failing to instruct the jury to limit its consideration of the evidence introduced on the charge of riot in a penal institution to the manner specified in the indictment.

The indictment charged that Grant committed this offense by "commit[ting] an unlawful act of violence, to-wit: the accused did forcefully block correctional officers from entering" his prison cell. Grant contends that reversal is warranted because evidence was presented that he flooded his cell, and the trial court did not instruct the jury to limit its consideration of the evidence to the manner specified in the indictment, i.e., forcefully blocking correctional officers from entering his cell. We disagree.

> A jury instruction defining a crime as an act that can be committed in a manner other than the manner alleged in the indictment violates a defendant's due process when "there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment."[19]

Grant is correct that the offense of riot in a penal institution may be committed in two ways: "Any person legally confined to any penal institution of this state . . . who commits an unlawful act of violence *or* any other act in a violent or tumultuous manner· commits the offense of riot in a penal institution."[20] Grant is also correct that the

---

[17] (Emphasis in original.) *Porter v. State*, 272 Ga. 533, 535 (3) (531 SE2d 97) (2000).

[18] *Fields v. State*, 167 Ga. App. 816, 818 (3) (307 SE2d 712) (1983); OCGA § 16-2-2.

[19] (Citations omitted.) *Henderson v. State*, 252 Ga. App. 295, 297 (1) (a) (556 SE2d 204) (2001), citing *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999).

[20] (Emphasis supplied.) OCGA § 16-10-56 (a).

court's charge initially tracked the statutory language. However, the court then specifically instructed the jury that it was required to find beyond a reasonable doubt that Grant committed the offense of riot in a penal institution as alleged in the indictment. Accordingly, when considered in its entirety, the court's charge fairly instructed the jury that it could convict Grant only in the manner charged in the indictment.[21] It follows that his due process rights were not violated.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 1, 2002.

*Barry V. Smith*, for appellant.
*Fred R. Simpson, Acting District Attorney, Charles S. Cox, Assistant District Attorney*, for appellee.

