### A08A0060. GLOVER v. THE STATE.
(663 SE2d 772)

BERNES, Judge.

Following a jury trial, Audie Glover appeals from his conviction on two counts of cruelty to children in the first degree and one count of aggravated battery. He argues that the prosecution failed to prove venue beyond a reasonable doubt and that the trial court unlawfully closed the courtroom during the child victim's testimony, committed harmful error by permitting witnesses to comment on the ultimate issue of the case, and abused its discretion by failing to give a jury instruction on the lesser included offense of reckless conduct. We find no error and affirm.

> On appeal, we review the evidence in the light most favorable to the verdict and determine if a rational trier of fact could find all the essential elements of the crime charged beyond a reasonable doubt. We do not weigh the evidence or judge the credibility of witnesses. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Allen v. State*, 281 Ga. App. 294, 295 (1) (635 SE2d 884) (2006).

So viewed, the evidence adduced at trial showed that on December 22, 2002, Glover's mother called 911 concerned about the well being of her granddaughter, the three-year-old child victim. An officer from the Smyrna Police Department responded to the reported address, an apartment complex located in Cobb County, to investigate. Michael Thomas, an occupant of the apartment, refused to allow the officer to enter. As the officer left to obtain a search warrant, Thomas took the child victim behind his apartment and handed her over a fence to Rhonda Stephens, Glover's girlfriend. Stephens left the apartment complex in a taxicab with the child.

The officer, who had been tipped off by a manager of the apartment complex, subsequently located and stopped the taxicab. Stephens initially attempted to hide the victim in the back seat and pass a second child to the officer, but the officer ultimately discovered the victim. He immediately observed that her eyes were blackened and she had a large bump on her forehead. Based on these obvious injuries, the officer called the paramedics to transport the victim to the hospital for observation.

The paramedic and EMT who transported the victim also observed her to have injuries to her face. When the paramedic asked the victim how she got the bump on her head, the child reported that "her daddy gave [it to] her."

At the hospital, the child was treated by a pediatric emergency physician who found her to have bruises and markings over most of her body. At trial, the physician described the injuries that she observed, including a swollen arm; bruises and marks to her face; linear marks along the skin of her other arm that she estimated were a week old; marks on her hand; and marks and linear marks on her abdomen, legs and upper back. She further observed marks consistent with burns on her buttocks. Photographs were taken of the child's injuries and shown to the jury at trial. When the physician asked the child who had hurt her, the child responded that it was her father, Glover. The physician opined that the marks on the side of the victim's face had been traumatically induced and that the linear marks on her body were consistent with "a striking injury." The physician opined that the child's injuries were not accidental but were consistent with child abuse.

At the hospital, an investigating detective conducted a recorded interview with the victim. When asked about her injuries, the child answered that "[m]y daddy hit me with a belt," and she consistently maintained that response throughout the duration of the interview. The interview was played for the jury.

The following day, the victim was taken to a children's hospital out of concern for distension in her abdomen. She was seen by both a physician and a nurse practitioner. The physician found that the victim had soft tissue swelling in the abdominal and pelvic wall, which was consistent with trauma. He characterized the marks on her buttocks as being consistent with burn injuries. The nurse practitioner further testified that the victim had injuries that looked like welt marks from a belt and also appeared to have been burned.

On January 9, 2003, the victim was seen by a forensic pathologist at the state medical examiner's office. He testified that the patterned injuries on the child's abdomen, groin area, and thighs were consistent with the child being hit by a belt. He further opined that the soft tissue injuries on the child's back, buttock, and upper thighs were blunt force injuries inflicted by an instrument that was not sharp. The pathologist testified that the injuries to the child's arm were likely inflicted as the child put out her hand to fend off an object that was being used on her body. He further noted that the circular injuries on the child's buttock were consistent with burns and were reminiscent of burns that could be inflicted by a hot object such as the end of a cigarette. He concluded that the injuries on the victim would have been painful to receive.

In addition to the above, the jury heard testimony from a case manager with the Cobb County Department of Family and Children Services ("DFCS") who first talked to the child while she was at the hospital. The caseworker characterized the child's injuries as being "one of the more severe cases of marks and bruises [she] had seen." She testified that when she asked the child why she was in the hospital, the child responded that "her daddy had spanked her with a belt."

The jury also heard testimony from two different foster mothers who had kept the child victim after she was removed from Glover's care. One of the women was a retired police officer who had worked for ten years as an investigator in the medical examiner's office. She testified that she had been a foster parent for 17 years and had cared for over 1,200 children, and that this child's injuries "were one of the worst [she] had ever seen on a child that was still alive." She further testified that when she asked the victim what had happened to her, the victim responded that "[m]y daddy hit me." The second foster mother also testified that the victim stated that her father had beaten her with a belt and had burned her with cigarettes many times.

Finally, the jury heard a recorded interview with Glover by the investigating detective on the day that he was arrested. Glover stated that the victim began living with him in June or July 2002. When shown the photographs of his daughter's injuries, Glover admitted that the marks on her forearms, legs, and back were caused from "whippings" that he had given her. He admitted that he had beaten her daily using a belt with a silver buckle. He further stated that the swelling on the victim's hands was caused when she put her hands behind her back while being whipped. Glover admitted that his discipline was extreme and that he needed anger management or some other kind of help.

Glover was charged with cruelty to children in the first degree for maliciously causing the victim cruel and excessive physical and mental pain by hitting her with a belt (Count 1) and burning her with an unknown object (Count 2); aggravated battery for maliciously causing the victim bodily harm by seriously disfiguring her body by burning her (Count 3) and by hitting her with an unknown object (Count 4); and aggravated assault by unlawfully making an assault upon the victim with a belt, which, when used offensively against her, was likely to result in serious bodily injury (Count 5) and with a different unknown object which, when used offensively against her, was likely to result in serious bodily injury (Count 6). The jury found him guilty on all counts. The trial court merged one count of aggravated battery (Count 3) and both counts of aggravated

assault (Counts 5 and 6) into the other counts and sentenced Glover on the remaining convictions. This appeal followed.

1. Although not specifically enumerated as error, the evidence set forth above was sufficient to sustain Glover's convictions. OCGA §§ 16-5-24 (a) (aggravated battery); 16-5-70 (b) (cruelty to children). See *Morgan v. State*, 272 Ga. App. 68, 69 (611 SE2d 740) (2005); *Harris v. State*, 223 Ga. App. 661, 663 (478 SE2d 458) (1996).

2. Glover asserts that the state failed to prove venue because it did not present evidence that the victim was actually beaten in Cobb County. We disagree.

Venue, like every other material allegation in an indictment, must be proved beyond a reasonable doubt. *Harris v. State*, 279 Ga. App. 570, 572 (2) (631 SE2d 772) (2006). The state may prove venue by direct or circumstantial evidence. Id. On appeal,

> we view the evidence in a light most favorable to support the verdict to determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.

(Punctuation and footnote omitted.) Id. at 572-573 (2).

Glover was indicted in Cobb County for crimes committed sometime between July 1, 2002 and December 22, 2002. The evidence presented at trial established that Glover lived with Stephens and the victim at Michael Thomas's apartment. That apartment was located in Cobb County. The manager of the apartment complex saw the victim at the apartment on a daily basis, and knew that she lived in the apartment with Glover. Glover admitted that he gave the victim whippings on a daily basis. The manager saw the victim in the apartment with injuries.

Although no witness testified to actually having seen Glover abuse the child in Cobb County, the above circumstantial evidence authorized the jury to find beyond a reasonable doubt that the offenses occurred in that county, thus establishing proper venue. See OCGA § 17-2-2 (h) ("If in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed."); *Cardenas v. State*, 282 Ga. App. 473, 475 (2) (638 SE2d 866) (2006) (when crimes have been committed continuously, evidence that the defendant committed the crimes in one county even though he may have also committed them elsewhere is sufficient to establish venue); *Drake v. State*, 238 Ga. App. 584, 588 (2) (519 SE2d 692) (1999) (venue established by proof of victim's county of residence and evidence that

defendant had access to her there).

3. Glover claims that the trial court erred in closing the courtroom to nonessential personnel during the child victim's testimony. Glover's counsel did not object, and in fact conceded, to the decision to close the courtroom; consequently, "there is no basis to support his claim that the trial court violated his constitutional right to a public trial." *Garren v. State*, 220 Ga. App. 66, 67 (3) (467 SE2d 365) (1996). See *Hunt v. State*, 268 Ga. App. 568, 571 (1) (602 SE2d 312) (2004); *Jackson v. State*, 252 Ga. App. 157, 161 (4) (555 SE2d 835) (2001). Although Glover claims that he voiced his objection to his counsel at the time that the courtroom was cleared and therefore did not acquiesce to that decision, his counsel testified at the new trial hearing that he did not have a conversation with Glover about the issue. The conflict in the testimony presented a credibility issue that the trial court clearly resolved against Glover and we will not second guess the trial court's conclusion on appeal. *McClam v. State*, 291 Ga. App. 697, 699 (3) (662 SE2d 790) (2008); *Ford v. State*, 234 Ga. App. 301, 303 (2) (506 SE2d 668) (1998).

Glover also asserts that his counsel was ineffective for failing to object to the clearing of the courtroom. In order to establish a claim for ineffective assistance of counsel, Glover must show both that his counsel's performance was deficient and that the deficiency resulted in actual prejudice to his defense. *Payne v. State*, 290 Ga. App. 589, 593-594 (5) (660 SE2d 405) (2008). There is a strong presumption that counsel has rendered adequate performance, and decisions that are made in the exercise of reasonable professional judgment do not equate to ineffectiveness. Id. Moreover, "a [defendant] has suffered actual prejudice only where there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 594.

Here, Glover's counsel testified at the new trial hearing that he did not object to the closing of the courtroom because he recognized that the victim was very young and he believed it to be appropriate under the circumstances. His decision not to object clearly constituted an exercise of reasonable professional judgment. Cf. *Campos v. State*, 263 Ga. App. 119, 122 (587 SE2d 264) (2003); *Williamson v. State*, 207 Ga. App. 565, 567 (2) (b) (428 SE2d 628) (1993).

Furthermore, the burden was on Glover to establish that he suffered actual prejudice from the closing of the courtroom, which he has failed to do. *Purvis v. Crosby*, 451 F3d 734, 740-741 (III) (11th Cir. 2006) (noting that, in the context of an ineffective assistance of counsel claim, prejudice will only be presumed in three limited circumstances, to wit, the actual or constructive denial of the assistance of counsel altogether, or a showing of state interference

with counsel's assistance). See also *Turpin v. Todd*, 268 Ga. 820, 828-830 (2) (b) (493 SE2d 900) (1997) (holding that a defendant seeking to overcome a procedural bar to his claim of error is not entitled to the benefit of a presumption of prejudice). Accordingly, Glover has not shown a reasonable probability that the result of the trial would have been different but for his counsel's alleged error. *Payne*, 290 Ga. App. at 593-594 (5).

4. Glover next asserts that the trial court erroneously permitted two witnesses to give their opinion concerning the ultimate issue of the case. Georgia law generally precludes a witness from testifying as to his or her opinion regarding an ultimate issue in the case because to do so would invade the province of the jury. *Medlock v. State*, 263 Ga. 246, 248 (3) (430 SE2d 754) (1993). Expert witnesses, however, are permitted to give their opinions on an ultimate issue in the case if "the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman." (Citation omitted.) Id. We will address each of Glover's challenges in turn.

(a) Glover argues that the trial court erred in admitting the following expert testimony from the pediatric emergency physician who treated the victim immediately after she was taken into protective custody:

Q: Now, are these injuries accidental injuries?
A: No, they're not.
[Objection made and overruled]
Q: Why do you say these are nonaccidental?
A: There is no child who can inflict these injuries on themselves the way that they are inflicted on her body and it looks like it's repetitive because it looks like some of the injuries are a little older than others and children generally don't try to hurt themselves that way.
Q: Are these consistent with child abuse, [doctor]?
A: In my judgment, yes.

We need not reach the question as to whether the physician's testimony that the victim's injuries were nonaccidental was proper because it was cumulative of additional testimony in the trial to which Glover posed no objection. When the state asked the forensic pathologist the same question, he testified without objection that "[t]he majority of injuries don't appear accidental, particularly the patterned injuries that we discussed." Glover thus waived any objection to the similar testimony from the emergency room doctor.

*Jackson v. State*, 272 Ga. 554, 556 (4) (532 SE2d 674) (2000) ("[A]dmission of evidence over objection is not cause for reversal when same evidence is admitted subsequently without objection."); *Depree v. State*, 276 Ga. App. 499, 501 (2) (623 SE2d 701) (2005).

Nor was the expert's testimony improper that, in her judgment, the child's injuries were consistent with child abuse. We have previously held that an expert witness "may . . . express an opinion as to whether medical or other objective evidence in the case is consistent with" the state's theory of the case. (Emphasis omitted.) *Harris v. State*, 279 Ga. App. at 571 (1). See *Pippins v. State*, 263 Ga. App. 453, 459-460 (4) (c) (588 SE2d 278) (2003).

(b) Likewise, the trial court's admission of the DFCS case manager's statement that "[this] was one of the more severe cases of marks and bruises I had seen" was not erroneous. The state established that the caseworker had been with DFCS for ten years, had investigated approximately fifteen to twenty cases each month, and had seen hundreds of physically abused children. The evidence was relevant to the issue of excessive physical pain, an essential element of the crime of cruelty to children. See OCGA § 16-5-70 (b). The case manager's statement did not express an opinion on an ultimate issue of the case. Accordingly, her comparison of the child's injuries to those of other child abuse victims over the course of her experience was properly admitted. *Cherry v. State*, 174 Ga. App. 145, 147 (6) (329 SE2d 580) (1985).

Moreover, even assuming that admission of the testimony was erroneous, we nevertheless conclude that, based on the overwhelming evidence of Glover's guilt, it is highly probable that the error did not contribute to the judgment and was thus harmless. See *Jackson v. State*, 281 Ga. 705, 706 (2) (642 SE2d 656) (2007); *Nixon v. State*, 234 Ga. App. 797, 800 (1) (507 SE2d 833) (1998).

Although Glover also attributes error to the case manager's statement that "[t]he case was substantiated," he failed to make an objection in the trial court and therefore did not preserve this issue for appellate review. *Horne v. State*, 262 Ga. App. 604, 605 (1) (586 SE2d 13) (2003) (failure to make a contemporaneous objection generally precludes appellate review of a claim of error).

5. Finally, Glover argues that the trial court erred in failing to charge the jury on reckless conduct as a lesser included offense of each of the indicted offenses. Relying on the statement that he gave to the detective prior to his arrest, he argues that the beatings that he inflicted upon the victim were not abusive and were for a proper purpose (discipline), and therefore were not intentional. Again, we disagree.

(a) *Cruelty to Children*. Glover was indicted on two counts of cruelty to children in the first degree — the first as a result of him

having hit the victim with a belt (Count 1), and the second as a result of him having burned the victim (Count 2). The crime of cruelty to children in the first degree is committed when a person "maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70 (b). On the other hand, "[r]eckless conduct is an act of criminal negligence, rather than an intentional act, that causes bodily harm or endangers the bodily safety of another." (Citation and punctuation omitted.) *Carter v. State*, 228 Ga. App. 403, 404 (492 SE2d 259) (1997).

Glover admitted that he beat the three-year-old victim with a belt once or twice a day for doing "bad things." The victim had marks — both new and old — covering most of her body, including her arms, legs, abdomen, groin area, and back. Glover admitted that these marks were caused from the beatings that he inflicted upon her. The swelling in the victim's arm resulted from her failed attempts to protect herself as she was being hit. Glover admitted that the beatings were extreme and agreed that he needed help.

This evidence established, beyond a reasonable doubt, that Glover's actions were intentional, were done to cause the victim pain, and were not acts of criminal negligence. "Intention may be manifest by the circumstances connected with the perpetration of the offense." *Harris v. State*, 223 Ga. App. at 663. It is inconsequential that Glover intended the beatings to constitute a form of acceptable discipline, as opposed to abuse, because "every person is presumed to intend the natural and probable consequences of his conduct, particularly if that conduct [is] unlawful and dangerous to the safety or lives of others." (Punctuation and footnote omitted.) *Grant v. State*, 257 Ga. App. 678, 682 (1) (c) (572 SE2d 38) (2002). There was simply no evidence of mere reckless conduct in this case. Accordingly, the trial court did not err by refusing to instruct the jury on the law of reckless conduct as to Count 1. *Allen v. State*, 247 Ga. App. 10, 15 (3) (a) (543 SE2d 45) (2000). See *Banta v. State*, 282 Ga. 392, 397-398 (5) (651 SE2d 21) (2007).

Although Glover also argues that a reckless conduct charge was warranted on Count 2, which encompassed his acts of burning the victim, the record makes clear that his trial strategy was to cast doubt on whether the marks on the victim's buttocks were burns at all. Glover did not testify and the victim's burns were not discussed during his recorded interview; however, Rhonda Stephens denied that Glover had burned the victim. Moreover, the obvious theory of Glover's defense was that the victim's apparent burn wounds were actually caused by a case of untreated ringworm. As presented, the evidence showed that Glover was either guilty of cruelty to children or guilty of no crime at all. "If the evidence shows the completed offense, as charged, or no offense, the trial court is not required to

charge the jury on the lesser included offense." (Footnote omitted.) *Allen*, 247 Ga. App. at 16 (4) (a).

(b) *Aggravated Battery*. Because the trial court merged one count of aggravated battery and both counts of aggravated assault into the remaining convictions, the only relevant inquiry is the trial court's refusal to instruct the jury on reckless conduct as to Count 4 (aggravated battery). As to that count, the trial court did charge the jury on the lesser included offense of simple battery.[1]

> Given that the jury rejected the option of finding [Glover] guilty of [simple] battery and found the aggravating factor of malice, it is unreasonable to assume that the jury would have reached a different result had it been charged on the even less culpable misdemeanor of reckless conduct.

(Footnote omitted.) *Grant*, 257 Ga. App. at 682 (1) (c). It follows that the trial court did not err in refusing to give the charge of reckless conduct. Id. See *Christensen v. State*, 245 Ga. App. 165, 166 (1) (a) (537 SE2d 446) (2000).

*Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED JUNE 18, 2008.

*Brian Steel*, for appellant.

*Patrick H. Head, District Attorney, Eleanor A. Dixon, John R. Edwards, Assistant District Attorneys*, for appellee.

---

[1] Indeed, the trial court also instructed the jury on the lesser included offenses of simple battery on Count 3 and simple assault on Counts 5 and 6.